George **CHATMAN**, Individually, and for all others similarly situated, Plaintiffs,

v.

Reginald D. **BARNES**, Chairman, et al., Defendants.

No. 70–C–322.

United States District Court, N. D. Oklahoma.

Feb. 21, 1973.

Byron S. Matthews, Ben G. Price, Tulsa, Okl., for plaintiff.

Robert H. Mitchell, Asst. Atty. Gen. (Larry Derryberry, Atty. Gen. of Oklahoma, Dutchess Bartmess, Asst. Atty. Gen., with him on the brief), for defendants David Hall, Governor of Oklahoma, and Larry Derryberry, Atty. Gen.

Robert Chase Gordon, Oklahoma City, Okl. (J. Harry Johnson, Raymond J. Totoro, Oklahoma City, Okl., with him on the brief), for all other defendants.

Before HOLLOWAY, Circuit Judge, DAUGHERTY, District Judge, and BARROW, Chief Judge.

## MEMORANDUM OPINION AND ORDER

HOLLOWAY, Circuit Judge.

This is an action for declaratory and injunctive relief challenging the constitutionality of several provisions of the Oklahoma Social Security Act, as amended, 56 O.S.A. § 161 et seq., and of the Oklahoma Department of Public Welfare Manual of Policies and Procedures. The suit was brought by the plaintiff Chatman on behalf of himself and all others similarly situated against the members of the Public Welfare Commission, the Director of Public Welfare, the Governor and Attorney General of Oklahoma and the Tulsa County Administrator of Public Welfare.[1] Plaintiff Chatman raises three principal issues:

(1) whether the provisions of 56 O.S. A. § 183 and related provisions of the manual making records confidential and inaccessible to him and his counsel are violative of procedural due process;

(2) whether the provisions of 56 O.S. A. § 182 making it unlawful for any person to charge or receive any fee for representing an applicant for or recipient of assistance under the Act denies procedural due process; and

(3) whether the denial to plaintiff by the Commission of benefits under the Oklahoma Aid to the Disabled Program on the ground of his having been disabled during minority and the ability of his parents to support him now as a disabled adult violates the equal protection clause, since those adults becoming disabled after majority are paid such benefits without regard to the ability of their parents to support them.

After answers were filed herein, cross-motions for summary judgment were made. However following the summary judgment hearing the parties submitted the case for decision on a comprehensive stipulation of facts. From examination of the stipulation, the affidavits and exhibits we are satisfied that there is no genuine issue as to any material fact. The controlling facts are

1. Chief Judge Barrow as a single judge held an earlier hearing on the propriety of the suit's being maintained as a class action and determined that it was probably maintainable as such under Rule 23 (b)(2) or (3), F.R.Civ.P., subject to further order by the court on consideration of evidence presented pursuant to Rule 23(c)(1). We discuss below the propriety of a class action.

agreed on and there remain only the legal issues outlined above.

The general facts agreed on were that plaintiff Chatman was 37 years of age in September, 1971, unmarried and unemployed. He has been a deaf mute since birth and has extremely poor vision. He has no source of income other than support from his parents. He received welfare benefits under the Oklahoma Aid to the Disabled Program from May, 1964, until August, 1968. This assistance was then terminated because the family income earned by his Father exceeded a monthly maximum.[2] In March, 1970, Chatman applied for assistance again, which was denied in April, 1970, on the same ground. This suit was commenced in October, 1970.

It is stipulated that the defendants are granting welfare aid to disabled adults who have parents capable of supporting them, and that such aid is given to adults who became disabled after majority, whether or not the parents of the disabled adult are able to support him. The defendants are not granting aid to disabled adults who have remained dependent because they are handicapped or disabled, if such disabled adults have parents able to support them under the defendants' need standards. Aid is denied to such an adult who has been disabled and dependent on his parents since childhood.

These adverse rulings by the defendants and procedural rules applied by them premise the constitutional issues presented. We turn now to the class action matter and these constitutional issues.

### (1) *The propriety of a class action*

As stated in Note 1, supra, it was earlier determined that this action could likely be maintained as a class suit. However, for reasons appearing below we conclude that the plaintiff Chatman is not entitled to assert the constitutional objections made to 56 O.S.A. §§ 182 and 183, respectively dealing with the confidentiality of welfare records and the receiving of fees for representing applicants for or recipients of welfare assistance. Therefore it is necessary to recognize the distinct classes involved as to the separate issues. Since we hold that the plaintiff Chatman may not maintain the objections to these statutes, he would not adequately represent the classes involved. See Norman v. Connecticut State Board of Parole, 458 F.2d 497, 499 (2d Cir.). Moreover there is no showing that the classes are so numerous that joinder of all members is impracticable. Therefore, we conclude that no class suit is proper as to those issues.

As to the remaining issue of the equal protection challenge to the department's classification under Section 321.-18 of the Department Manual, we leave undisturbed the prior order of the court. It was agreed that during the one year preceding the stipulation there were an estimated 41 cases of denial of welfare benefits under circumstances similar to the plaintiff Chatman. It is apparent there are questions of constitutional law common to those persons. The claims of the plaintiff Chatman as to the invalidity of the Department Regulation are typical of the class, and he will fairly and adequately protect their interests. See Esplin v. Hirschi, 402 F.2d 94 (10th Cir.), cert. denied, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459; Cypress v. Newport News General & Nonsectarian Hosp. Ass'n, 375 F.2d 648, 653 (4th Cir.); Union Pac. R. R. Co. v. Woodahl, 308 F.Supp. 1002, 1008 (D.Mont.); Rule

2. The Father's income was stipulated to have been $371.50 gross or $301.50 net per month. At that time the maximum allowable monthly income for any family under public assistance was $281.00. When Chatman applied in March, 1970, for assistance again, the family income was $370.00 gross or $340.00 net per month, and at that time the maximum allowable income for the family group of four persons was $300.00. It was because of income exceeding those limits and the fact that Chatman had been disabled during minority that assistance was terminated in 1968 and denied again in 1970.

23(a), F.R.Civ.P. Therefore, as to the equal protection issue and those similarly situated to the plaintiff Chatman, we conclude we should not disturb the prior order of the court and that the action may be maintained on that one issue for those persons situated similarly to the plaintiff Chatman.

### (2) *The refusal of access to Chatman's welfare file and the prohibition against receiving or charging fees*

The particular facts on these issues are covered by the stipulation and affidavits. Plaintiff's welfare file is kept confidential under the state statute, 56 O.S.A. § 183, and program regulations. He and his attorney have been denied access to the file by defendant Nicholson, the Tulsa County Administrator of Public Welfare. Access to the file was refused in September, 1970. The regulations allow some material to be made available (general information on expenditures, number of recipients, etc., as described in § 413.3 of the State Manual), but the full case record itself is not made available under the regulations for examination by the client or by any other person not directly concerned with the administration of the public assistance program. The challenged statute governing fees is 56 O.S.A. § 182 which prohibits charging or receiving a fee for representing an applicant for or recipient of assistance.[3]

Under the regulations an applicant or recipient of public assistance may, if he is dissatisfied with a determination of eligibility made by the Department, ask for a fair hearing. It was agreed that in such a case he or his authorized representative is permitted to examine all information or other evidence relating to the determination under § 535.3 of the State Manual. As then applicable § 535.3 did cover some general assistance to the applicant or recipient desiring to request a hearing.[4] That regulation in substance entitled one who had requested a hearing to a written statement of all the facts on which the local office based its decision and an opportunity to inspect documents, charts, etc., which were used by the local office in making its decision, but denied access to the case record. The regulation also provided that the applicant or recipient was to be given a copy of the written testimony which the local office will present at the hearing. See § 535.5 of the State Manual as revised July 1, 1970. However, it was stipulated that at no time has Chatman asked for a hearing.

Chatman argues that the denial of access to the file deprived him of procedural due process, relying on Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L. Ed.2d 287, and similar cases. He likewise says that *Goldberg* and other authorities demonstrate that the prohibition of fees violates due process principles by depriving him of counsel.

It is clear, however, that after notice of the adverse welfare rulings Chatman was entitled to request a hearing and to receive the basic data with which he would have to deal at such a hearing.

---

3. 56 O.S.A. § 182 provides as follows:
   " § 182. Charging fees for representing applicant prohibited
   "It shall be unlawful for any person to charge or receive any fee for representing an applicant for or recipient of assistance under the provisions of this Act, except as to criminal proceedings brought against an applicant or recipient under the penal provisions of this Act, with respect to any application or proceedings before the Department or the Commission, whether such fee or charge be paid by the applicant or recipient or any other person."

4. We note that the current regulations as revised June 1, 1971, make different provisions as to the materials available to the client or his representative. On receipt of the notice that a hearing has been scheduled, the local office gives the client or his representative a copy of the written testimony, documents and records that the local office will present at the hearing. Neither the client nor his representative because of "professional ethics regarding confidentiality of case records recognized in law, have access to the case record." See § 535.5 of the State Manual as revised June 1, 1971.

No request or desire for a hearing, or for a further application by Chatman for benefits, is shown and therefore there was no denial of information in connection with a hearing or an application. Likewise since there was no such showing, the statutory restriction on fees had no application.

■■ In order for one to challenge the validity of a statute or regulation he must show that he has been injured by its operation. Hendrick v. Maryland, 235 U.S. 610, 621, 35 S.Ct. 140, 59 L.Ed. 385. See also Voeller v. Neilston Warehouse Co., 311 U.S. 531, 537, 61 S.Ct. 376, 85 L.Ed. 322; Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (Brandeis, J., concurring). Therefore, since plaintiff Chatman has not demonstrated the actual injuries complained of in connection with such a hearing, see Goldberg v. Kelly, supra at 269–271, 90 S. Ct. 1011, he is not entitled to assert either of these claims of denial of procedural due process.[5]

(3) *Plaintiff Chatman's claim of denial to range of equal protection*

As stated, Chatman was denied benefits under the Oklahoma Aid to the Disabled Program.[6] The basis of denial was the income of his father of $340 net per month, exceeding the $300 maximum allowable for a family of four receiving public assistance, and the fact that Chatman became disabled during minority. The Department's position is based on section 321.18 of the Department Manual, which provides in pertinent part as follows:

" . . . Parents (natural or adoptive) have a legal responsibility for supporting, to the extent of their ability, adult children who have remained dependent because they are handicapped or disabled to the extent that they are unable to work and maintain themselves."

The plaintiff argues that the denial of benefits to him, while they are allowed to persons becoming disabled during majority without regard to family income, violates the equal protection clause of the Fourteenth Amendment. It is pointed out that the deprivation of welfare benefits may not be dismissed on the ground that such benefits are a privilege and not a right, as Graham v. Richardson, 403 U.S. 365, 374, 91 S.Ct. 1848, 29 L.Ed.2d 534, makes clear. Moreover plaintiff says that equal protection principles bar an arbitrary distinction between those receiving and those denied welfare assistance, unless there is a sufficient state interest served by the distinction, relying on Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L. Ed.2d 600. And plaintiff argues that there is no such interest shown or present here so that violation of the equal protection clause is clear.

The demands of the equal protection clause have been stated in different ways. The courts are required to subject to scrutiny legislative classifications that impinge on fundamental interests such as the right to vote, Harper v. Virginia Board of Elections, 383 U.S. 663, 670, 86 S.Ct. 1079, 16 L.Ed.2d 169; to travel, Shapiro v. Thompson, supra at 634, 89 S.Ct. 1322; or when considering suspect classifications such as those based on race, sex or alienage. See, *e. g.*, Loving v. Virginia, 388 U.S. 1,

---

5. We also note that, in view of the absence of any allegation that Chatman wishes to make further application or seek a hearing before the Department or Commission, it is unnecessary to consider whether enforcement of any statute or regulation is sufficiently imminent or the case sufficiently "ripe" to make a declaratory judgment appropriate. *Cf.,* Abbot Laboratories v. Gardner, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681; Toilet Goods Association v. Gardner, 387

U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697; Gardner v. Toilet Goods Association, 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704; International Longshoremen's Union v. Boyd, 347 U.S. 222, 74 S.Ct. 447, 98 L.Ed. 650.

6. This aid was administered under a composite plan in Oklahoma by authority of 42 U.S.C.A. §§ 1381–1385, and abbreviated "AABD." This Oklahoma welfare program is a federally assisted one.

9, 87 S.Ct. 1817, 18 L.Ed.2d 1010; Reed v. Reed, 404 U.S. 71, 75, 92 S.Ct. 251, 30 L.Ed.2d 225; Graham v. Richardson, supra, 403 U.S. at 372, 91 S.Ct. 1848. However, while recognizing that welfare assistance involves the most basic economic needs of impoverished persons, in deciding the validity of classifications in welfare regulations the Supreme Court has found no basis for applying a different constitutional standard such as applies where activities protected by the Bill of Rights are involved. Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491; see also Jefferson v. Hackney, 406 U.S. 535, 546, 92 S.Ct. 1724, 32 L.Ed.2d 285; Richardson v. Belcher, 404 U.S. 78, 81, 92 S.Ct. 254, 30 L.Ed.2d 231.

■■ Therefore we feel we must examine the classification here challenged under equal protection standards applied generally and not those fashioned for the protection of "fundamental" interests. These general standards require that the classification be ". . . given the benfit of every conceivable circumstance which might suffice to characterize the classification as reasonable rather than arbitrary and invidious." McLaughlin v. Florida, 379 U.S. 184, 191, 85 S.Ct. 283, 288, 13 L.Ed.2d 222; and see McGowan v. Maryland, 366 U.S. 420, 425–426, 81 S.Ct. 1101, 6 L.Ed.2d 393; Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78–80, 31 S.Ct. 337, 55 L.Ed. 369; Note, Developments in the Law—Equal Protection, 82 Harv.L.Rev. 1065, 1082. A statutory discrimination will not be set aside if any state of facts may be conceived to justify it. Dandridge v. Williams, supra at 485, 90 S.Ct. 1153; United States v. Maryland Savings-Share Ins. Corp., 400 U.S. 4, 6, 91 S.Ct. 16, 27 L.Ed.2d 4.

■ Nevertheless, although the tests are variously expressed, the Supreme Court ". . . requires at a minimum, that a statutory classification bear some rational relationship to a legitimate state purpose." Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 172, 92 S.Ct. 1400, 1405, 31 L.Ed.2d 768.

And it is clear that the purpose of ". . . saving . . . welfare costs cannot justify an otherwise invidious classification." Shapiro v. Thompson, supra at 633, 89 S.Ct. at 1330.

We must consider the classification here under these demands of the equal protection clause. The classification, we must remember, is one by which persons disabled while adults are paid benefits by the state without regard to the income of their parents, while persons disabled during childhood and remaining disabled as adults are denied disability benefits if their parents have income of the minimum standards relating to net income and resources—here $300 per month. Thus, if there is a minimum family income of such amount two disabled adults are treated differently, one being afforded disability benefits when he becomes disabled as an adult and the other being denied them because his disability occurred during childhood and has continued.

We must decide whether such a classification denying benefits to one in plaintiff's position bears some rational relationship to a legitimate state purpose under the standard demanded by the equal protection clause. See Weber v. Aetna Casualty & Surety Co., supra at 172, 92 S.Ct. 1400. Therefore we turn to the purposes relied on by the defendants to sustain the classification.

■ The defendants first maintain that the difference in treatment is justified by the Oklahoma statute imposing the duty of support of a poor person on the father and mother to the extent of their ability. 10 Okla.St.Ann. section 12, which is relied on, provides:

"§ 12. Maintenance of poor persons by parents—Promise of adult child to pay for necessaries

"It is the duty of the father and the mother of any poor person who is unable to maintain himself by work, to maintain such person to the extent of their ability. The promise of an adult child to pay for necessaries previously furnished to a parent is binding. R.

L.1910, § 4375; Laws 1943, p. 20, § 1."

We find no warrant in the statute for the classification. The duty of support is imposed on all parents without regard to whether the adult child became disabled during minority. Neither the statute nor the cases construing it afford any support for the classification made. See Tesch v. Tesch, 65 S.D. 637, 277 N. W. 328, construing similar statutory language. See also the cases collected in Annot., 1 A.L.R.2d 910. The statute suggests no legitimate state interest to sustain this discrimination as to benefits.

■ Secondly, defendants contended at argument that the classification was justified by the Department's experience. The assertion was made that the Department has found that persons disabled during adulthood are more needy than those dependent on their parents since childhood. The difficulty is that there is no record support for the assertion. No proof tending to confirm the assertion was made and we are not referred to any data lending support to it. It is not a matter of which the court might take judicial notice. Since there is no record support for the contention it may not serve to justify the discriminatory classification. See Shapiro v. Thompson, supra at 631, 634, 89 S.Ct. 1322.[7]

■ Third, defendants make related contentions that their classification is a reasonable effort at allocation of limited welfare funds to the most needy and that the courts may not strike down a reasonable classification. Again the difficulty is that the generalization is at war with the specifics of this discrimination and how it works.

■ We are, of course, instructed that the courts may not second-guess state officials in the difficult allocation of limited public welfare funds. Dandridge v. Williams, supra at 487, 90 S.

Ct. 1153. Here, however, there is no reasoned policy of denying aid to those in circumstances like the plaintiff Chatman in order to extend it to more needy persons. The person disabled during majority is extended aid without any regard to the size of income of his parents. Thus the discrimination does not allocate aid to more needy persons and may not be justified on such a basis. See Shapiro v. Thompson, supra at 631, 635, 89 S.Ct. 1322.

■ Other rationalizations for the classification might be attempted, but none were suggested or supported by the defendants. We feel that none of the attempted justifications can sustain the discriminatory classification. None of these reasons advanced or imaginable shows a rational relationship to a legitimate state purpose served by the discrimination, as required by Weber v. Aetna Casualty & Surety Co., and other recent and clear pronouncements by the Supreme Court. See Gomez v. Perez, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1–17–73); Eisenstadt v. Baird, 405 U. S. 438, 447, 92 S.Ct. 1029, 31 L.Ed.2d 349. Accordingly we must hold that classification made by the Department here is an invidious discrimination in violation of the equal protection clause of the Fourteenth Amendment.

It is, therefore, ordered and adjudged that:

(1) the prior order of the court relating to maintenance of a class suit is modified; it is ordered that the plaintiff Chatman may not maintain a class suit as to his claims that 56 O. S.A. §§ 182 and 183 are invalid; otherwise, the prior order of the court shall remain in effect permitting maintenance of this action by the plaintiff Chatman for himself and all others similarly situated as to denial of benefits pursuant to Section 321.18 of the Department Manual;

---

7. The assertion is akin to that advanced to justify the statutory distinction between the ages at which men and women might be prosecuted as adults due to the "demonstrated facts of life." Without an explanation or showing of its basis, such an assertion cannot sustain an invidious discrimination. See Lamb v. Brown, 456 F.2d 18, 20 (10th Cir.).

(2) the constitutional objections to 56 O.S.A. §§ 182 and 183, relating respectively to the confidentiality of records and the prohibition of charging or receiving of fees for representing applicants for recipients of assistance under the Oklahoma Social Security Act, may not be maintained by the plaintiff Chatman, and all relief is denied as to said statutes;

(3) it is adjudged and declared that Section 321.18 of the Department Manual, as applied to deny benefits to the plaintiff Chatman and others similarly situated, is violative of the equal protection clause of the Fourteenth Amendment to the United States Constitution; and it is adjudged and declared that the plaintiff Chatman and others similarly situated are and were entitled to benefits denied them under the Oklahoma Aid to the Disabled Program under said Section of the Manual; and the defendant members of the Oklahoma Public Welfare Commission, its Director, and its Administrator for Tulsa County, Oklahoma, are enjoined from denying said benefits to the plaintiff Chatman and all others similarly situated in the class described under said Section of the Manual.

(4) all other relief against the defendants or any of them is hereby denied.