In the Matter of the Application of
NORTHEASTERN WATER COMPANY
(the name of which was formerly
"Northeastern Water and Electric Corporation")
for a determination, pursuant to Section 61 of the
General Corporation Law, of the value of certain
shares of its formerly authorized $4 Preferred
Stock.

*New Castle, August 30, 1944.*

142

*Clarence A. Southerland,* of the firm of Southerland, Berl & Potter, together with Shearman & Sterling and Archibald L. Jackson, all of New York City, for petitioner.·

*Caleb S. Layton,* of the firm of Richards, Layton & Finger, together with Sullivan & Cromwell and Delano Andrews, all of New York City, for certain of the claimants; and with Lord, Day & Lord, of New York City, for other claimants.

*H. Newton White, Jr.,* of the office of Logan & Duffy, and Hall Hammond, of Baltimore, Md., for certain of the claimants.

PEARSON, Vice-Chancellor: The corporation surviving a merger filed a petition for a determination of the persons entitled to an appraisal and payment of shares of its preferred stock, and for the appointment of an appraiser, pursuant to *Section* 61 *of the Corporation Law.* A considerable number of stockholders had filed purported objections and demands. To provide an orderly procedure for the adjudication of many matters in one proceeding, the order fixing a date for a hearing directed that persons asserting rights under the statute should file verified claims, and that the corporation might answer these, within a stated time, if it wished to object. Provision was made to divide the hearing into two parts, the first being called the "original hearing", and the second, the "adjourned hearing." The scope of the original hearing (the present stage of the proceeding) is limited by the order to a determination based upon the petition, claims and answers filed, without testimony or other proof. The main purpose of this hearing is to avoid needless proof by the immediate allowance of any claims as to which the corporation has raised no adequate defense; by the dismissal of those which fail to show a *prima facie* right under the statute; and by indicating those for which proof is necessary. The parties have agreed

that certain of the claims should be set down for an "adjourned hearing" upon testimony and other proof. As to the remaining claims, disputed questions raised by the answers will now be considered.

1. *Proof of validity of signatures to objections and demands.* The petitioner's answers to most of the claims object upon the ground that petitioner has no knowledge or information sufficient to form a belief as to whether or not objections and demands received by it purporting to be signed by the claimants, respectively, were actually so signed. Petitioner asks for proof of authenticity. A person claiming the right to an appraisal and payment has the burden of showing that he is a stockholder within the statutory meaning, and that he has satisfied the conditions required of him for the perfection of that right. *In re Universal Pictures Co., Inc., ante p.* 72, 37 *A.* 2d, 615, 618. To establish performance of these conditions, the claimants rely upon objections and demands which purport to be signed by them. No reason is apparent why the corporation should not be permitted to put them to their proof where it does not know the signatures to be valid, and hence, does not know that these particular objections and demands were made or adopted by these claimants. Where an answer to a bill of complaint denies knowledge of the truth of a material allegation, proof of such allegation is an essential element of the complainant's case. *Consolidated F. I., Inc. v. Johnson,* 21 *Del. Ch.* 417, 430, 192 *A.* 603, 609. A similar rule applies in the case of exceptions to claims in receivership proceedings. Accordingly, the claims here in question (not dismissed on other grounds) must be set down for hearing.

2. *Claimants who assert the right to an appraisal and payment of old stock, but whose claims show that they now hold certificates for new stock issuable under the merger agreement: Claim of Charles H. Mellor, trustee for Bar-*

*bara and Milton Chalmers.* The claimant, as trustee under an agreement of trust, filed an objection and demand with respect to shares of the old stock of petitioner. However, annexed to his original claim were certificates for shares of new stock, which had been issued by the surviving corporation after the merger upon surrender to it of certificates for the old. Petitioner's original answer opposed the claim on the grounds, among others, that it was not for payment of old stock, and that the claimant had accepted the merger. On March 31, 1944, after the hearing, the claimant amended his claim, alleging that his certificates for old stock had been kept in the custody of a New York bank, pursuant to a letter of instructions. Continuing, the claimant asserts that on January 10, 1944, without authorization from claimant, the bank sent the certificates to petitioner's transfer agent for exchange for shares of new stock; and that although the certificates were not endorsed by claimant or accompanied by any instructions signed by him, and although the petitioner knew that claimant had previously made an objection and demand for payment, it wrongfully issued the certificates for the new shares which are annexed to the claim. In an amended answer, the corporation raised additional objections. By one of these, it questions the authority of the claimant, as trustee, to make the objection, demand and claim. Under our statutes, a stockholder of a merging corporation may accept the merger, and thus become bound by any lawful alteration of his rights which it prescribes. But, an objecting minority stockholder is not compelled to submit to the will of the majority to the extent of being forced into the status of a stockholder of the surviving company. *Section* 61 confers upon "any stockholder" of such corporation the right to elect to dissent from the merger, secure a valuation of his stock in money, and collect this as a debt due. *Cole v. National Cash Credit Ass'n.,* 18 *Del. Ch.* 47, 156 *A.* 183; *Porges v. Vadsco Sales Corporation,* 27 *Del. Ch.* 227, 32 *A. 2d* 148. It would seem unjustifiable to deny this right to a trustee-stockholder,

in the absence of some provision in the particular trust instrument, or in the local law governing the administration of the trust, which is unequivocally inconsistent with the exercise of the right. Ordinarily, unless restricted by such means, a trustee who owns shares may exercise the powers conferred by stock ownership. 1 *Restatement of the Law of Trusts*, §§ 193, 231, *Comment f*. In the present trust agreement, there is no semblance of a restriction which could prevent the claimant from proceeding under the appraisal statute. It appears from the claim that the trust is governed by the laws of New York. It is alleged that nothing in these laws impedes claimant from participating in a proceeding under *Section* 61. However, the answer puts the claimant to proof of this allegation, and hence, the ultimate question of the trustee's authority cannot now be decided.

The claimant takes the position that his letter of instructions to the custodian did not authorize the latter to make the exchange. The purport of certain expressions in the letter are not altogether clear to me. It may be that at an adjourned hearing, the parties would see fit to introduce evidence to explain their meaning. A construction should be deferred until such evidence is offered, or until the matter is more fully argued by the solicitors.

If the exchange was authorized, the claim should be dismissed, and there would be no need to consider the further question whether the claimant ratified the exchange and accepted the merger. Petitioner argues that even if the exchange was unauthorized, ratification and accceptance are demonstrated by claimant's filing his original verified claim with new certificates attached, "alleging that the new certificates evidence 'the shares of stock for the valuation of which Claimant is entitled,'" and "failing to object, until the filing of the amended claim, to the action either of his bank depositary or of Petitioner in effecting the exchange." The amended claim was filed less than two months after the

exchange. Petitioner does not allege that it has changed its position; nor object on the ground of estoppel. Assuming that the exchange was unauthorized, it would not necessarily follow that claimant's acts, which appear from the present record, amount to a ratification and acceptance. It would seem unreasonable to draw that conclusion from the fact that claimant did not remind the corporation of its own improper act (if it was improper) until the amended claim was filed. Admittedly, the allegation in the original claim concerning the certificates annexed (which were actually for new stock) is not consistent with a claim based upon old stock. But no more is the filing of the claim itself consistent with acceptance of the merger. No authority has been cited for a finding of ratification in a comparable factual situation. For the reasons indicated, the claim should be set down for hearing.

*Claim of Frank D. Arthur, trustee for the estate of Geraldine E. Arthur, and Cohu & Torrey.* As to fourteen of the shares, upon which this claim is based, the certificates attached to the original claim represent shares of new stock. Without considering other objections, it appears that neither of the claimants was the registered holder of the fourteen shares when the objections and demands were made; and it does not appear that the corporation was apprised of the names of the registered holders at either time. Accordingly, the claim must be dismissed as to the fourteen shares. *In re Universal Pictures Co., Inc., supra.* The issues raised by the amended answer with reference to six additional shares embraced by this claim may be tried at the adjourned hearing.

*Claim of Cohu and Torrey.* The reasons for the dismissal of the preceding claim with respect to fourteen shares are applicable to twenty-four shares included in this claim. Concerning five additional shares, claimant alleges in an amendment that petitioner wrongfully and without authori-

zation from claimant, issued a certificate for five shares of the new stock. The claim will be set down for hearing upon the issues raised with respect to these five shares, and the remaining fifty-nine shares.

3. *Claims raising the question whether written demands for payment must be actually received by, the corporation within the statutory period.* In two claims, it is alleged that written demand for payment was made upon petitioner by mailing the demands within the twenty-day period. The claimants assert "that if a written demand is made and deposited in the mails in time to reach the corporation on or before the twentieth day after the filing of the merger agreement in the ordinary course of the mails, the claim should be allowed if in fact the demand was received by the corporation within a reasonable time after the expiration of the twenty-day period and it appears that no harm has resulted to the corporation by reason of the delay in the receipt of the demand." The statute states the requirement concerning a demand for payment, thus:

"If any stockholder * * * shall within twenty days after the date on which the agreement of consolidation or merger has been filed and recorded, as aforesaid, demand in writing, from the corporation resulting from or surviving such consolidation or merger, payment for his stock, * * *."

This requirement is in the form of a condition and the time period is an integral part of the condition. Moreover, this twenty-day time period serves as a basis for determining the beginning and end of a subsequent thirty-day period, during which the corporation is directed to pay the value of the stock to the demandants; and thus, serves to fix the yet subsequent period of four months, during which a petition may be filed in the Court of Chancery for the appointment of an appraiser, in the event that the corporation and the stockholders are unable to agree as to the value of the stock concerned. Claimants' contention recognizes the necessity of actual receipt by the corporation. The making

of the demand cannot be completed until it is communicated. Claimants correctly point out that the statute should be liberally construed for the protection of objecting shareholders. *Schenck v. Salt Dome Oil Corporation*, 27 *Del. Ch.* 234, 34 *A.* 2d 249; *In re Universal Pictures Co., Inc., supra.* Even so, a liberal construction does not call for an abandonment of orderly procedure prescribed by the statute. To adopt the suggested rule would, it seems to me, be better characterized as a deliberate disregard of definite statutory requirements, rather than a liberal construction. The cases cited by claimants do not alter this view. These claims, however, may be set down for hearing on factual issues raised by the answer.

4. *Claim for stock held by a husband and wife as tenants by the entirety, where the husband alone signed the objection and demand.* The decision upon this claim is controlled by the rule and reasoning of the Chancellor in the case of *In re Giant Portland Cement Co.*, 26 *Del. Ch.* 32, 21 *A.* 2d 697, with reference to the exercise of rights of stock ownership by tenants by the entirety. Such rights must be exercised jointly by the husband and wife. Consequently, the present objection and demand were defective since the wife did not join in them, and the claim must be dismissed.

5. *Claims by registered holders who, the corporation alleges, are not the beneficial owners.* Two partnerships filed claims based on shares registered in their respective names. In the corporation's answer, it states that it is informed and believes that the claimants are not the beneficial owners of the shares, and that it has no knowledge or information sufficient to form a belief as to whether or not the claimants were authorized to make the objections, demands, or claims on behalf of the beneficial owners. Proof is demanded. There is no intimation that the corporation has notice that the registration of the shares in the names

of their present holders is improper, or that these holders are actually violating any duty owed to beneficial owners, or that anyone claiming to be a beneficial owner has come forward to assert his rights, or to oppose any of the acts of the registered holders. The corporation does not allege knowledge of any specific relationships in which the registered owners hold any particular blocks of shares—whether under express or implied trusts, or otherwise. Claimants purport to act in their own interest without disclosure of any trust or agency. The circumstance that it is "informed and believes that said Claimants are not the beneficial owners," the corporation argues, is sufficient to put it upon inquiry; that is, to charge it with responsibility in its dealings with claimants as though it had actual knowledge of the character and extent of their authority, which an inquiry or investigation would disclose.

It is apparently conceded by all interested parties that if the manner of registration of the certificates disclosed a trust, the corporation would be put upon inquiry. But the form of registration of these shares indicates that the registered holders are the absolute owners.

When a stockholder seeks to obtain payment of his shares by taking the steps prescribed by *Section* 61, he engages in what are essentially corporation-shareholder transactions. The *Delaware Corporation Law* provides that "Every holder of stock in a corporation shall be entitled to have a certificate * * * certifying the number of shares owned by him in such corporation." *Rev. Code of Del.* 1935, § 2047. Further, "The shares of stock in every corporation shall be * * * transferable on the books of the corporation in such manner and under such regulations as the By-laws provide." *Rev. Code* § 2048. The directors may look to the list of record holders to determine the persons entitled to notice of any meeting of stockholders, to the payment of a dividend, to the allotment of rights, to

exercise the rights in respect of any change, conversion, or exchange of capital stock, or for the obtaining of consent of stockholders for any purpose. *Rev. Code* § 2049; Compare: *Bryan v. Western Pacific R. Corporation, ante p.* 13, 35 *A.* 2*d* 909. Prior to an election of directors, a corporation must prepare a list of the stockholders entitled to vote, and "The original or duplicate stock ledger shall be the only evidence as to whom are the stockholders entitled to examine such list or the books of the corporation, or to vote in person or by proxy at such election." *Rev. Code* § 2061. This statute provides a limited but practical rule of evidence for the ready ascertainment of persons entitled to notice of and to vote at a stockholders' meeting. *In re Giant Portland Cement Co.,* 26 *Del. Ch.* 32, 21 *A.* 2*d* 697.

It is thus apparent that the registration of shares is highly significant in corporation-shareholder transactions. An important purpose of the registration is to provide a practical means whereby the corporation may ascertain the names of the persons with whom it may ordinarily deal as shareholders. 1 *Machen: Modern Law of Corporations,* § 856. Likewise, it affords a means whereby a "real" owner may readily become entitled to notification and recognition as a shareholder.

In view of the statutory provisions, failure to have shares registered so as to indicate an interest in others than the registered holder may reasonably be deemed a manifestation of intent that the corporation should deal freely with the registered holder as the true owner without investigating his authority. Otherwise, the "real" owner would be in a position to say—"I have not revealed my interest in the shares by the normal statutory means, which would enable me best to protect it, but have left my shares registered as though the holder were the absolute owner; nevertheless, if the corporation for some reason has cause to suspect that I have an interest in the shares, then its dealings with the registered holder will be at its peril unless it investigates

his actual authority." Such a rule would be inconsistent with the tenor of the statutory provisions, and with the real owner's omission to resort to the means designed to protect him as well as the corporation. It would tend to thwart, in large measure, practical advantages of facility in dealings which otherwise would result from these provisions. It would impose an altogether unreasonable responsibility upon corporations for preventing breaches of trust. This does not mean that a corporation may shut its eyes when it has notice that a registered holder is about to commit a breach of duty to a real owner, or that it may give no heed to a warning of a real owner not to recognize the registered holder. It means only that knowledge that a person, registered as the absolute owner, is not the beneficial owner, should not put the corporation upon inquiry as to the authority of the registered holder to act.

That a corporation is not put upon inquiry in dealing with its registered holders under circumstances similar to the present would seem to constitute the foundation for the widespread and common practice of holding shares in the names of nominees. This is often done to avoid practical difficulties in the way of making prompt transfers which would exist, under the rules of various stock exchanges, if the registration disclosed the interest of the real owners. *Christy and McLean, The Transfer of Stock,* § 74a. In these and in other instances, a form of registration is deliberately chosen which does not reveal the relationship of the real owner. Where shares are so registered, the real owner necessarily runs risks that his interests may be prejudiced by the acts of the holder of record. Compare: *In re Giant Portland Cement Co., supra; Atterbury v. Consolidated Coppermines Corporation,* 26 *Del. Ch.* 1, 20 *A.* 2d 743, 748, 749.

The corporation concedes the existence of the nominee practice, and apparently further concedes that for the purposes of transferring shares, voting, and paying dividends, the corporation may treat the registered holder as the true

owner, even though it has notice that other persons have interests in the shares. It contends, however, that "A demand for payment of stock pursuant to *Section* 61 is an extraordinary act, an act outside the usual course of business, an act for which the real owner gave not even apparent authority when it caused registration in the name of a nominee." Because of the statutory provisions discussed above, it seems to me that such a distinction or limitation is unjustified, and that a corporation should be protected in dealing with its registered holders as freely in matters arising under *Section* 61 as in other corporation-shareholder transactions.

Finally, the corporation contends that under the authority of *Schenck v. Salt Dome Oil Corporation,* 27 *Del. Ch.* 234, 34 *A.* 2d 249, a registered holder who is not the real owner may not act under *Section* 61, unless his authority be shown. In the *Schenck* case, it was contended that only a registered holder was a "stockholder" entitled to proceed under the then operative appraisal statute. The Chancellor declined thus to limit the construction of the word "stockholder." He held that unregistered transferees, the "real" owners of shares and of certificates endorsed for transfer, were entitled to proceed under the act. But I do not understand the holding to mean that only real owners, whether registered or not, are so entitled. Nor is there anything incompatible in a construction of the word "stockholder" in the present statute as including a registered holder, so as to authorize such holder to act under it, at least where no inconsistent action has been taken by any unregistered "real" owner. What would be the result in the event of such inconsistent action may be decided when the question arises. The case of *Matter of Application of Bacon,* 287 *N. Y.* 1, 38 *N. E.* 2d 105, cited by petitioner, is not opposed to the conclusion reached here.

No sufficient reason appears why the corporation should be permitted to challenge the action of the present registered

holders. A liberal construction of the appraisal statute requires the avoidance of complexities in proceedings under it, particularly where the corporation will not be subjected to risks of liability. Since the registered holders are entitled to proceed under the statute, proof that they have complied with its requirements should be enough to establish their right to an appraisal. Accordingly, the claimants need not furnish evidence of their authority to act. The hearing upon these claims will be confined to other issues raised.

6. *Claim for shares registered in the name of "Mabel Allen Tiffany for Life and After Her Death to Charles Wyatt Tiffany u/w Alice T. Tiffany."* The claimants are Mabel Allen Tiffany, as life tenant, and Charles Wyatt Tiffany, as remainderman. In its answer, the corporation alleges that it has no knowledge whether under the will of Alice T. Tiffany the claimants were authorized to make the objections, demands and claims; or whether the claimants are the only persons entitled under the will to receive any amounts which may be payable on account of the stock. It demands proof of these matters. The claim does not set forth the relevant provisions of the will, or specify the jurisdiction, the laws of which are applicable. The claimants argue that the registration of the shares in their names constitutes a representation that they are shareholders entitled to act as such; and that the corporation is estopped from calling this in question. Any representation made by the form of registration discloses that the rights of the claimants are dependent upon a designated will, and is, hence, conditional. Moreover, it does not appear that the corporation has in anywise misled the claimants to act to their detriment. A case of estoppel has not been made out. Proof of the matters questioned in the answer should be required.

It is unnecessary to discuss other claims filed. The principles stated above will be applied, where pertinent, in the case of all claims.

An order accordingly will be advised.