755 P.2d 1294

**E. Dale WATERS and Norma R. Waters, husband and wife, Plaintiffs–Respondents,**

v.

**DOUBLE L, INC., a/k/a Double "L" Mfg., Inc., Defendant–Appellant.**

**No. 16388.**

Court of Appeals of Idaho.

Dec. 1, 1987.

Addendum On Denial of Rehearing June 3, 1988.

Petition for Review Granted Sept. 2, 1988.

Ronald J. Jarman (Jarman & Tranmer) and Lowell N. Hawkes (Hawkes, Esplin & Burnham), Pocatello, for defendant-appellant.

Clark Gasser (Green, Service, Gasser & Kerl), Pocatello, for plaintiffs-respondents.

BURNETT, Judge.

The Model Business Corporation Act, as adopted in Idaho, allows shareholders to dissent from certain corporate actions and to demand payment for their shares at fair value. In this case we must decide (1) whether a corporation's actions triggered the right to dissent; (2) whether the shareholders' conduct estopped them from asserting their rights as dissenters, and (3) whether, in any event, the corporation substantially complied with those rights. The district court held that dissenters' rights had been triggered and that the dissenting shareholders were entitled to judgment based on the sum they demanded as the fair value of their stock. For reasons stated below, we affirm.

The background facts may be summarized as follows. The corporation, Double L, Inc., is engaged in the business of manufacturing agricultural machinery and related products. Lynn and Sharon Johnson founded the corporation and were its majority shareholders until 1982. Lynn also was the president of the corporation. In 1979 Dale and Norma Waters purchased a minority interest in the corporation's stock.

Dale became a vice-president and director of the corporation. He and Norma eventually became the dissenting shareholders in this case.

The events leading to dissent originated in 1981, when the corporation became financially distressed. The corporation sought a new investor and ultimately negotiated an agreement with a Colorado entity known as Pioneer Astro. The corporation agreed to sell Pioneer Astro all of its real property and equipment. The corporation further agreed to sell Pioneer Astro a sufficient number of treasury shares to give Pioneer Astro eighty percent ownership of the corporation. In return, Pioneer Astro agreed to pay cash for the shares and assets, to fund a line of credit for the corporation's business, and to lease the purchased assets back to the corporation.

The corporation's management requested all shareholders to waive their preemptive rights in order to effectuate the proposed sale of treasury stock to Pioneer Astro. Dale and Norma Waters never agreed in writing to do so. The parties dispute whether Dale ever stated orally his willingness to do so. Nevertheless, the corporation's board of directors—consisting of Dale and the Johnsons—voted unanimously to authorize the transaction, to submit it for shareholder ratification, and to add the president of Pioneer Astro to the board. Although a letter was sent to all shareholders soliciting their ratification of the agreement, no written responses were received. Dale and Norma subsequently sent a letter to the corporation, stating that they had not waived their preemptive rights and asking the corporation to protect their interests. In response, the corporation called a special shareholders' meeting. At the meeting, all shareholders except Dale and Norma voted to approve the sale of stock to Pioneer Astro and to amend the corporation's bylaws governing preemptive rights. Dale, apparently acting for himself and Norma, abstained from voting on the sale and voted against the alteration of preemptive rights. He later demanded that the corporation pay the fair value of the shares he and Norma owned. After an exchange of correspondence, in which the corporation made no specific offer to buy the shares, Dale and Norma filed suit. The district judge entered summary judgment against the corporation for an amount based upon the demand. This appeal followed.

I

The threshold issue is whether the corporation's actions in connection with the Pioneer Astro sale triggered a right to dissent. The answer to this question requires interpretation of I.C. §§ 30–1–80 and 30–1–81, Idaho's version of the so-called "dissenters' rights" statutes. Although these particular statutes were enacted as part of the recodification of Idaho corporation law in 1979, dissenters' rights statutes elsewhere have a long history. The United States Supreme Court has provided the following succinct explanation of their origin:

> At common law, unanimous shareholder consent was a prerequisite to fundamental changes in the corporation. This made it possible for an arbitrary minority to establish a nuisance value for its shares by refusal to cooperate. To meet the situation, legislatures authorized the making of changes by majority vote. This, however, opened the door to victimization of the minority. To solve the dilemma, statutes permitting a dissenting minority to recover the appraised value of its shares, were widely adopted.

*Voeller v. Neilston Co.*, 311 U.S. 531, 535, n. 6, 61 S.Ct. 376, 377 n. 6, 85 L.Ed. 322 (1941). In effect, a dissenter is allowed to demand that the corporation buy back his shares at fair value if the corporation takes an action which fundamentally alters the character of the shareholders' investment. 13 W.M. FLETCHER, CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 5906.1 (Swearinger rev. 1984) (hereafter cited as FLETCHER).

Idaho Code § 30–1–80 lists the categories of corporate actions that trigger the right to dissent. The statute provides, in relevant part, as follows:

30-1-80. Right of shareholders to dissent and obtain payment for shares.—(a) Any shareholder of a corporation shall have the right to dissent from, and to obtain payment for his shares in the event of any of the following corporate actions:

. . .

(2) Any sale, lease, exchange, or other disposition of all or substantially all of the property and assets of the corporation not made in the usual or regular course of its business....

(4) Any amendment of the articles of incorporation which materially and adversely affects the rights appurtenant to the shares of the dissenting shareholder in that it:

. . .

(iii) Alters or abolishes a preemptive right of the holder of such shares to acquire shares or other securities....

In this case the dissenting shareholders, Dale and Norma Waters, have relied on subsections (a)(2) and (a)(4)(iii). They contend that the Pioneer Astro transaction was a "disposition of ... substantially all of the property and assets of the corporation not made in the usual or regular course of its business." They also contend that the amendment of the corporate bylaws, enabling the corporation to sell Pioneer Astro its treasury stock, "alter[ed] or abolish[ed] a preemptive right...." We examine these contentions in turn.

### A

■ The district court, in a memorandum opinion, found without discussion that the Pioneer Astro transaction did indeed constitute a sale of substantially all of the corporation's assets, within the meaning of I.C. § 30-1-80(a)(2). The corporation now attacks this finding. Noting that this is an appeal from a summary judgment, the corporation's able counsel points to the fact that the corporation retained certain assets

in the form of inventory, accounts receivable, and goodwill. This, he contends, is sufficient to frame a genuine issue as to whether the corporation actually disposed of substantially all of its assets. The dissenting shareholders argue that the issue has been waived because it was not presented below.

We find both arguments to be unpersuasive. In our view, the issue was joined in the district court. The corporation's answer to the dissenting shareholders' complaint expressly denied an allegation that the Pioneer Astro transaction constituted a sale of substantially all of the corporation's assets. However, we also think this denial, when placed in the context of the entire record, was insufficient to establish a genuinely controverted question of fact. After the corporation filed its answer, the dissenting shareholders took the deposition of Lynn Johnson, the corporate president. During that deposition, Lynn testified as follows:

Q. [Y]ou made an agreement whereby Pioneer Astro invested heavily in Double L; is that right?

A. Yes.

Q. And, as I understand it, basically, Pioneer Astro paid six hundred thousand dollars and established a three hundred and fifty thousand dollar line of credit for Double L; is that right?

A. That was the minimum; that was the agreement, the minimum amount that they would contribute, yes.

Q. In exchange for that Pioneer Astro bought your land, your machinery and the buildings owned by Double L?

A. Yes.

Q. *Was that substantially all of your assets?*

A. *Yes.*

(Emphasis added.) Moreover, the corporation's own conduct—seeking and obtaining shareholder approval, not only of the amendment to the bylaws on preemptive rights, but also of the Pioneer Astro transaction itself—implicitly indicated that the

transaction comprised a sale of substantially all of the corporation's assets. Had the transaction not embraced substantially all of the assets, or had the transaction been in the ordinary course of business, it would not have required shareholder approval. *See* I.C. §§ 30–1–4(e) and 30–1–78.

The corporation now argues that a balance sheet shows substantial retained assets. However, the balance sheet is for the month of July, 1983, eleven months *after* the sale to Pioneer Astro. We cannot determine from that document the extent or value of assets owned immediately before the sale. Finally, we note that when the district judge issued his memorandum opinion and granted the shareholders' motion for summary judgment, the corporation promptly moved for reconsideration and enumerated several alleged errors in the court's opinion. No error was ascribed to the court's determination that the Pioneer Astro sale encompassed substantially all of the corporation's assets. Accordingly, we hold that this question was not genuinely controverted below.

■ The corporation next contends that even if substantially all of the corporate assets were transferred outside the regular course of business, no dissenters' rights were triggered because the corporation was insolvent at the time of the transaction.[1] The corporation points to I.C. § 30–1–79(e), which provides that when a corporation is insolvent, shareholder authorization is not required to sell substantially all of the corporation's assets outside the regular course of business. The corporation would have us hold that if shareholders have no right to vote on a transaction, they have no right to dissent.

The argument is seductively simple and intuitively appealing. The corporation

seeks to buttress the argument by inviting our attention to the official comments to the Model Business Corporations Act. The comments state that "[g]enerally, only shareholders who are entitled to vote on the transaction are entitled to assert dissenters' rights with respect to the transaction." 3 MODEL BUSINESS CORPS. ACT ANNOTATED § 13.02, comment 1 (3d ed. 1986 supp.) (hereinafter "Model Act"). However, this is where the corporation's argument breaks down. Notwithstanding the quoted comment, the black letter language of the Model Act provides that shareholders *are* entitled to vote on a sale of substantially all assets, whether or not the corporation is solvent. *Compare* Model Act § 12.02 (no insolvency exception) *with* I.C. § 30–1–79(e) (insolvency exception). Thus, the drafters of the Model Act never intended insolvency to prevent a shareholder from dissenting. Moreover, when the Idaho Legislature created the insolvency exception, it also made another change to preserve the right to dissent. Model Act § 13.02(a)(3) provides that a shareholder is entitled to dissent from "consummation of a sale or exchange of all, or substantially all, of the property of the corporation other than in the usual course of business, *if the shareholder is entitled to vote on the sale or exchange....*" (Emphasis added.) Idaho Code § 30–1–80(a)(2) does not contain this language. Further, I.C. § 30–1–81(d) provides that "[i]f the proposed corporate action is to be taken *without a vote of shareholders,* the corporation shall send to all shareholders *who are entitled to dissent* ... a notice of the adoption of the plan of corporate action." (Emphasis added.) The drafters of the Idaho corporate code commented that the right of dissent belongs

---

1. The shareholders assert that this issue, too, has been raised for the first time on appeal. There is some truth to the assertion. So far as the record shows, the corporation never made the precise legal argument it presents there. However, it did raise an insolvency question in its answer. The shareholders responded by moving to strike the reference to insolvency as an "insufficient, immaterial and impertinent de-

fense." The district judge granted the motion. During the subsequent course of the proceedings, the corporation continued to claim that it had been insolvent. Although the corporation may not have had I.C. § 30–1–79(e) in mind when it raised the insolvency defense, we cannot be sure. We will, therefore, give the corporation the benefit of the doubt and consider its argument.

not merely to a shareholder who votes against a sale, but more broadly to any shareholder "who does not vote in favor of a sale...." REPORT OF COMMITTEE ON IDAHO MODEL BUSINESS CORPORATION ACT (Idaho Law Foundation, Inc., December 11, 1978), at 140. We conclude that the Legislature intended shareholders to have a right of dissent under the circumstances of this case.[2]

**B**

In light of this conclusion, we are not obliged, strictly speaking, to consider the shareholders' second asserted ground for dissenting—the modification of their preemptive rights. However, because this point has been argued vigorously, and because it later becomes relevant to our discussion of estoppel, *infra*, we will address the issue.

As noted above, I.C. § 30–1–80(a)(4)(iii) gives a shareholder the right to dissent from a corporate action which "[a]lters or abolishes a preemptive right of the holder of such shares to acquire shares or other securities." The corporation in this case proposed, and all shareholders except Mr. and Mrs. Waters agreed, to amend the bylaws[3] by relinquishing their preemptive rights

> as to any sale or acquisition of shares approved by majority vote of the shareholders or directors following prior notice to shareholders where the sale of shares is for the specific purpose of raising capital for the corporation including, but not limited to, the September 2, 1982 contract with Pioneer Astro Industries, Inc.

■ The corporation does not deny that this language directly implicates section 30–1–80(a)(4)(iii). Nor does the corporation deny that the Pioneer Astro sale diluted the percentage ownership enjoyed by existing shareholders. However, the corporation argues that the district court treated the shareholders as having "abandoned" any claim that the modification of preemptive rights had triggered a right to dissent. We disagree. The judge actually stated that "[p]laintiffs appear to have abandoned the *claim of shares* stemming from preemptive rights." (Emphasis added.) This reference was to an early assertion by Dale and Norma Waters that they were entitled to the fair value not only of shares they actually owned but also of additional shares they could have purchased. Thus, the record does not support the corporation's contention that the preemptive rights issue was withdrawn entirely.

■ The corporation further contends that the issue is a "red herring" because Mr. and Mrs. Waters had no real desire to invest further money in the corporation at the time of the Pioneer Astro sale. However, this is a question of fact we need not decide. A preemptive right is "an opportunity to acquire shares...." I.C. § 30–1–26(e). It does not depend for its existence or its value upon the shareholder's subjective intent to exercise it. The dissenters' rights statutes do not speak to the motives of shareholders. Rather, they speak to the objective nature of the transaction consummated by the corporation. FLETCHER § 5906.2, n. 1, *citing Good v. Lackawanna Leather Co.*, 96 N.J.Super. 439, 233 A.2d 201 (1967). Moreover, in this case the corporation undertook not only to modify preemptive rights in connection with the Pioneer Astro transaction, but

---

**2.** Insolvency might affect the *timing* of payment for the dissenters' shares. Idaho Code § 30–1–66 prohibits a corporation to redeem shares while it is insolvent. However, no issue relating to this statute has been raised in the present case.

**3.** Idaho Code § 30–1–26 provides that "[e]xcept to the extent limited or denied ... by the *articles of incorporation*, shareholders shall have a preemptive right to acquire unissued or treasury shares...." (Emphasis added.) As a general proposition, it is doubtful that preemptive rights could be modified by merely amending the bylaws. In this case, however, neither party at any time has challenged the efficacy of the corporation's action. It may not be in any party's interest to do so. Consequently, we will accept the issue as framed, assuming that the preemptive rights effectively were modified.

also to extinguish such rights in a broad category of future stock sales. For all these reasons we conclude that dissenters' rights were triggered by the modification of preemptive rights as well as by the sale of substantially all of the corporation's assets.

## II

We now turn to the corporation's argument that Dale Waters prepared documents and engaged in conduct equitably barring him and his wife from invoking any statutory rights as dissenters. Although the corporation employs a potpourri of equitable maxims in its argument, we perceive the issue to be one of estoppel. The elements of equitable estoppel have been summarized as follows:

(1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth, (2) the party asserting estoppel did not know or could not discover the truth, (3) the false representation or concealment was made with the intent that it be relied upon and (4) the person to whom the representation was made or from whom the facts were concealed, relied and acted upon the representation or concealment to his prejudice.

*Theriault v. A.H. Robins Co., Inc.,* 108 Idaho 303, 307, 698 P.2d 365, 369 (1985). Here, many of the facts relevant to these elements are disputed. Because the case comes to us on appeal from a summary judgment, we must view the narrative facts, and any legitimate inferences which can be drawn from those facts, in favor of the corporation. *E.g., McKinley v. Lyco Enterprises, Inc.,* 111 Idaho 792, 727 P.2d 1220 (1986).[4]

It is undisputed that Dale participated as an officer of the corporation in negotiating the agreement with Pioneer Astro. He also voted as a director in favor of the transaction. It is further undisputed that Waters drafted a letter urging the shareholders to waive their preemptive rights in the Pioneer Astro sale. However, this letter was prepared under the supervision of Lynn Johnson, the corporation's president. Lynn signed the letter; Dale did not.

The corporation argues that these facts frame a genuine issue regarding misrepresentation and reliance. We disagree. Dale's acts as a director and officer do not, in themselves, constitute a false representation that he would refrain from exercising his independent right as a minority shareholder to dissent from the transaction. The corporation has cited no authority to support the proposition that a director has a fiduciary duty to vote his minority stock for the benefit of the corporation and of the other shareholders, rather than for himself.[5]

The corporation further argues that Dale took actions *as a shareholder* which constituted misrepresentation. The corporation asserts that Dale knew the Pioneer Astro agreement would not be consummated unless all shareholders waived their preemptive rights, and that he personally agreed to do so. Dale also allegedly understood that Pioneer Astro was unwilling to repurchase shares except under the conditions specified in the contract. The inclusion of a "repurchase option" in the contract, at Dale's request, is corroborative evidence on this point. Dale gave assurances, according to corporate counsel, that he supported the agreement both as a director and as a shareholder. He further promised Lynn Johnson that he would do nothing to prevent the sale. Although these allegations are disputed, we think a trier of fact *could* find a false representa-

---

4. The shareholders urge us to apply the standard of review stated in *Riverside Development Co. v. Ritchie,* 103 Idaho 515, 650 P.2d 657 (1982). Because the corporation timely requested a jury trial, the *Ritchie* standard is not applicable.

5. If Waters had held a majority interest in the corporation, our analysis might well be different. Majority shareholders owe certain fiduciary duties to the minority. FLETCHER § 5763 (1984).

tion by Dale that he would not dissent from the Pioneer Astro agreement. The trier of fact could infer that Dale intended the corporation to rely on the false representation and that the corporation reasonably did so.[6]

■ However, this does not end our inquiry. In order to complete the elements of estoppel, the corporation would be required to show that it was prejudiced by such misrepresentation and reliance. On this point, the corporation argues that if Waters had earlier disclosed his intention to dissent as a shareholder, the agreement with Pioneer Astro would have been negotiated differently. However, this contention is vague and purely speculative. The record simply shows that Pioneer Astro agreed to pay a specified sum for the issuance of a sufficient number of shares to give it eighty percent ownership of the corporation. The record contains no facts from which it can be inferred that earlier knowledge of Waters' impending dissent would have materially altered the agreement. We cannot hypothecate a fact and then overturn a summary judgment upon an issue raised by that hypothecated fact. *Verbillis v. Dependable Appliance Co.,* 107 Idaho 335, 689 P.2d 227 (Ct.App.1984).

Moreover, the mere fact that Waters, or any other shareholder, might dissent would not, of itself, have precluded the corporation from proceeding with the Pioneer Astro transaction. As explained elsewhere in this opinion, the dissenters' rights statutes do not enable shareholders to block certain corporate actions; they merely allow the shareholders to obtain payment for their shares at fair value. The corporation has vigorously asserted throughout these proceedings that it was insolvent when the Pioneer Astro agreement was implemented. It has further asserted that all shares of stock in the corporation were valueless or had, at most, only nominal value. If these facts are true, then the corporation could have dealt with Waters' dissent by tendering him a nominal amount for his shares. Thus, the corporation would have suffered no substantial prejudice.

■ Finally, the corporation argues that Waters should be estopped from asserting dissenters' rights because they eventually demanded an unfairly high price ($65,000) for their shares. We are not persuaded that a high demand constitutes a misrepresentation in the sense required for estoppel. But even if it does, the other elements of estoppel have not been met. A party may assert estoppel only if it "did not know or could not discover" the false representation. *Thierault v. A.H. Robins Co., Inc.,* 108 Idaho at 307, 697 P.2d at 369. The corporation was in a better position than Waters to place a value on the shares.

The corporation further argues that to pay an inflated demand would have constituted a breach of its duty to its other shareholders. Certainly, the corporation was not obligated to pay any fanciful sum that might be demanded. However, as explained more fully below, the corporation *was* obligated to file a petition in court within sixty days if it disputed the demand. I.C. § 30–1–81(h). The statute provides that, "[i]f the corporation fails to file a

---

6. Waters argues that even if he made such representations, whether or not he was estopped, his wife could not be bound by them. The corporation responds that if this is true, then it is also true that Norma Waters never independently made a demand for payment as dissenter and cannot do so now. Our research has revealed some authority to support the proposition that a demand for payment on stock jointly owned by husband and wife is invalid unless signed by both spouses. *See Raab v. Villager Industries, Inc.,* 355 A.2d 888 (Del.), *cert. denied,* 429 U.S. 853, 97 S.Ct. 147, 50 L.Ed.2d 129 (1976) (joint tenants); *In re Northeastern Water Co.,* 28 Del.Ch. 139, 38 A.2d 918 (1944) (tenants by entirety). In fact, nothing in the record indicates that Norma joined her husband in the demand for payment. However, we decline to follow the approach taken by the Delaware courts. Idaho Code § 32–912 provides that either spouse may bind the community property, other than real property, by contract. It follows that either spouse is entitled to assert dissenters' rights on behalf of the other, at least so long as the corporation does not have reason to know that the nonsigning spouse objects. Similarly, we believe that the representations of one spouse regarding the exercise of shareholders' rights should be binding on the other spouse.

petition ... each dissenter who made a demand and has not already settled his claim against the corporation *shall be paid* by the corporation the amount demanded by him, with interest...." [Emphasis added.] As the comment to Model Act § 13.30(a) states, this time period is "jurisdictional." Such provisions in essence provide for a default against a corporation that fails to file a petition. *See, e.g., Voeller v. Neilston Co., supra.* Accordingly, a high demand produces a detrimental impact upon the corporation only if the corporation defaults under the statute.[7] Such self-inflicted injury is not prejudice within the doctrine of estoppel. We conclude that the dissenting shareholders were not estopped from asserting their rights in this case.

### III

■ Next we consider the corporation's argument that it substantially complied with the dissenters' rights. Idaho Code § 30-1-81 specifies the procedures to be followed when a corporation takes an action falling into one or more of the categories of section 30-1-80. The corporation must notify all shareholders that they have or may have a right to dissent, and it must provide them with a copy of the statutes. If the action is approved by the shareholders, or does not require the shareholders' approval, then the corporation must send a further notice to all shareholders who did not vote in favor of the action. If a shareholder does not demand payment within the time specified in the notice, he waives his dissenters' rights. If a demand is made, then within sixty days the corporation must remit the amount it estimates to be the fair value of the shares. It must also furnish the previous year's closing balance sheet, interim financial statements, and a notice of the dissenter's right to demand supplemental payment. If a dissenter believes the amount tendered to be insufficient, he

may send the corporation his own estimate of the stock value. If a settlement is not reached within sixty additional days, the corporation must file a petition seeking a judicial appraisal. If the corporation fails to seek an appraisal, the dissenter "shall be paid ... the amount demanded by him, with interest, and may sue therefore in an appropriate court." I.C. § 30-1-81(h)(6).

It is undisputed here that the corporation failed to comply with these procedures. Although the shareholders were notified of the proposed corporate actions, they were not informed of a possible right to dissent. Nor were they ever notified that they were entitled to demand payment. When the dissenters' attorney sent a written notice citing the statute and demanding payment, the corporation refused. After a long exchange of correspondence, the dissenters provided their own estimate of the fair value of the shares. They reminded the corporation that it was "required to file a Petition ... requesting that the fair value ... be determined by the Court in the event this dispute remains unsettled...." The corporation took no action, and dissenters brought suit. The district judge correctly found that the corporation had not followed the requirements of section 30-1-81.

However, the corporation has not claimed that it literally complied with the statute. Rather, it asserts that it substantially complied by including a repurchase agreement in the Pioneer Astro contract. Paragraph 10 of the contract provided as follows:

*Repurchase Option.* During the period January 1, 1984 through January 1, 1989, and for a period of six months after the termination of employment of any shareholder employee, any person who was a minority shareholder on September 1, 1982, may tender such shareholder's stock to Double L, Inc. and Double L,

---

7. We note that a similar "default" provision operates against a shareholder who fails to demand payment within the period specified by the corporation in its notice of right to dissent.

*See* I.C. § 30-1-81(e). Because the corporation did not give the required notice, this provision never was activated.

Inc. shall purchase such shares. The price for the shares shall be that mutually agreed upon. In the event Double L, Inc. and such minority shareholder are unable to agree upon the price, Double L, Inc. and such minority shareholder shall each select an appraiser and the two appraisers shall select a third who shall make the price determination and whose determination shall be final and binding upon Double L, Inc. and such minority shareholder.

We cannot agree that inclusion of this provision in the contract constituted substantial compliance with the dissenters' rights statutes. Dale Waters' rights under this provision differed substantially from his statutory rights. First, the contract allowed him to exercise his "repurchase option" only if he was terminated from his job. Second, the option was not effective until January 1, 1984, fifteen months after the contract was executed. Most importantly, the contract provision apparently provided for valuation of shares as of the date of termination. The dissenters' statute provides for valuation *"immediately before* the effectuation of the corporate action to which the dissenter objects, excluding any appreciation or depreciation in anticipation of such corporate action...." I.C. § 30–1–81(a)(3) (emphasis added). The reason for this timing is evident. On the one hand, a shareholder should not benefit from a corporate action from which he dissents. On the other hand, he should not be made to suffer any depreciation resulting from that action. A shareholder usually will dissent from an action because he fears the action will reduce the value of his shares. Therefore, a contract provision which gives the dissenter the value of his

shares at some point *subsequent* to the effective date of the corporate action does not serve the statutory purpose, even though it may or may not be advantageous to the dissenter in a particular case.

■■■■■ The corporation further asserts that it substantially complied because, as argued elsewhere, it was insolvent immediately before the sale and the shares were virtually worthless. The corporation contends that it would have been a useless gesture to conform to the statutory procedures of remitting a specific amount and seeking a judicial appraisal under these circumstances. Assuming for the sake of argument that the corporation was insolvent, we nevertheless cannot agree with the corporation's position. A dissenting shareholder is entitled to exercise his rights and to receive a judicial appraisal even where his shares are of doubtful value. *See Borea v. Locust Court Apts., Inc.,* 234 A.D. 450, 255 N.Y.S. 215 (N.Y.App.Div. 1932). Here, there clearly was a dispute over the value of the shares. The purpose of the judicial appraisal mechanism is to resolve such disagreements. The court would have been empowered to award fees to the corporation if the judge determined that the dissenters had acted "arbitrarily, vexatiously, or not in good faith" in attributing a value to their shares. I.C. § 31–1–81(i)(2). By failing to file a petition, the corporation defaulted, giving rise to the dissenters' entitlement to payment of the sum demanded.[8]

### IV

■■■■ The dissenting shareholders seek attorney fees on appeal pursuant to I.C. §§ 30–1–81(i)(2), 12–120 and 12–121. Sec-

---

**8.** The district court actually entered judgment for $60,825 rather than $65,000 as originally demanded. The court apparently made this adjustment because the dissenters initially made, but later abandoned, a demand based upon a greater number of shares than they actually owned at the time of the Pioneer Astro sale. No issue has been raised in this case as to whether a shareholder's demand for payment on more shares than he actually owns extends the time,

or otherwise affects the corporation's duty, to respond to the demand. We do not address that question.

Neither do we decide today whether a corporation's default obligates the court to enter judgment for a clearly unconscionable amount. Here, the sum of $60,825 was characterized by the district court as high, but was not found to be unconscionable.

tion 30–1–81(i)(2) provides that attorney fees

> may be assessed as the court may deem equitable against the corporation and in favor of any or all dissenters if the corporation failed to comply substantially with the requirements of this section, and may be assessed against either the corporation or a dissenter, in favor of any other party, if the court finds that the party against whom the fees and expenses are assessed acted arbitrarily, vexatiously, or not in good faith....

An award of fees under this statute is discretionary. See Model Act § 13.31, comment. The statute's reference to an "equitable" determination allows us to consider attorney fees in relation to the underlying equities in the case. The dissenters have received what may have been an unduly optimistic value for their shares. The corporation arguably has suffered an unfortunate result for its default under the dissenters' rights statutes. Under these circumstances, an award of fees would not be equitable.

■ Idaho Code § 12–120 applies to a broad field of commercial litigation. In our view, it yields to the greater particularity of I.C. § 30–1–81(i), which deals specifically with suits by dissenting shareholders. No award will be made under I.C. § 12–120. Neither can we say that this appeal was brought frivolously, unreasonably, or without foundation by the corporation. Accordingly, we will not award fees under I.C. § 12–121. *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 591 P.2d 1078 (1979).

The summary judgment entered by the district court is affirmed. Costs to respondents, Dale and Norma Waters. No attorney fees on appeal.

WALTERS, C.J., and HUNTLEY, J. Pro Tem., concur.

### ADDENDUM

### ON DENIAL OF PETITION FOR REHEARING

Our lead opinion holds that Dale and Norma Waters, shareholders in Double L, Inc., are entitled to payment for their shares under the dissenters' rights provisions of the Idaho corporation code. In a petition for rehearing, Double L has assailed our opinion on numerous grounds. We have considered each argument and have reexamined the record at length. Although the corporation's position is well advocated by able counsel, we conclude that the lead opinion should stand.

Before responding specifically to the points raised in the petition, we note that it embodies an approach to the case which has produced difficulty since the onset of the corporation's dispute with the dissenting shareholders. The corporation continues to assert that Mr. Waters has acted in bad faith and is not entitled to invoke the dissenters' rights statutes. By focusing on the legitimacy of Mr. Waters' status as a dissenter, the corporation has given insufficient attention to the self-implementing operation of the statutes. The corporation essentially has defaulted under the mandatory provisions for determining the amount to be paid for dissenters' shares.

■ The lesson of this case is that a corporation may not ignore the statutory scheme simply because it questions whether the shareholders are entitled to dissent. Where dissent in fact occurs, and the corporation wishes to avoid defaulting on the valuation issue, it must follow the statutory scheme. It may raise the entitlement issue in conjunction with a judicial proceeding which the corporation is required to commence under I.C. § 30–1–81(h). But if the corporation disregards the statutory process and commences no such proceeding because it believes the shareholders have no right to dissent, it takes the risk that a court may rule otherwise in an action eventually brought by the shareholders. That is what happened in this case.

■ We now turn to the petition before us. Among the points raised, the corporation argues that dissenters' rights were not triggered by any impairment of preemptive rights because the shareholders never had

a preemptive right to exercise. This issue is raised for the first time on rehearing, not having been presented to the district court nor to this Court earlier on appeal. Accordingly, we will not address it now. The corporation further asserts that this Court has erred in failing to find the payment demanded by the shareholders to be "unconscionable" and in failing to find that Mrs. Waters never established her status as a separate dissenting shareholder. We have addressed these matters in our lead opinion and we adhere to the views there expressed. However, two other points raised in the petition merit further discussion here.

## I

■ The corporation asserts that no dissenters' rights were triggered by the sale of assets to Pioneer Astro because the transaction was a "sale in the ordinary course of business" and, in any event, was not a sale of "all or substantially all" of the corporation's assets. As noted in our lead opinion, Pioneer Astro purchased all of the corporation's real property and all of its operating equipment. Additionally, Pioneer Astro acquired eighty percent of the corporation's outstanding stock. In return, Pioneer Astro paid cash for the shares and assets, created a line of credit for the corporation, and leased back the purchased assets. Apparently, the corporation would have us now hold that because its business continued to operate after the transaction was consummated, the transaction could not be regarded as a sale of all or substantially all of the corporation's assets.

However, the mere fact that the corporation remained in business under the same name is not the critical criterion. The nature of the transaction takes precedence over its form. Our focus is upon the relationship between the assets transferred and those remaining. Here, the corporation sold all of its hard assets, retaining intangible assets of admittedly dubious value. (Indeed, the corporation has asserted throughout this litigation that the Pioneer

Astro sale came on the brink of bankruptcy.) Only by renting the hard assets back from Pioneer Astro was the corporation able to continue its operations. This is a classic "sale of assets" transaction. *See generally* H.G. HENN & J.R. ALEXANDER, LAWS OF CORPORATIONS § 341 (3d ed. 1983). *See also* MODEL BUSINESS CORP. ACT ANNOTATED § 12.01 (1984) official comment at 1319.

■ We are similarly unpersuaded that the sale was in the ordinary course of business. The corporation urges that whenever a business seeks financing to prevent insolvency, it acts in the "ordinary course." While avoiding insolvency may indeed be a legitimate business purpose, we are not convinced that it is, *ipso facto*, action taken in the "ordinary course." In the present case, the corporation after the Pioneer Astro transaction was not, in any real sense, the same entity that existed before the transaction.

The "ordinary course of business" test has been construed narrowly by the courts. While it is not intended to limit corporate directors solely to customary daily business activity, the sale of a substantial portion of the capital assets and stock is not considered to be in the ordinary course of business unless the corporate enterprise consists of acquiring and disposing of such property or stock. *See generally* 19 AM. JUR.2D *Corporations* § 2663 (2d ed. 1986). Double L does not contend that it previously had engaged in the purchase and sale of capital assets and corporate stock as a regular part of its business.

## II

■ Finally, the corporation challenges the conclusion in our lead opinion that the shareholders were not barred by Mr. Waters' conduct from dissenting as to the Pioneer Astro transaction. The corporation argues that the record contains numerous facts demonstrating that Waters took actions, both as a director and as a shareholder, indicating that he did not intend to

dissent from the sale. The corporation contends that Waters' representations from the outset that he would not interfere with the sale estopped him from later asserting his dissenter's rights.

As we explained in the lead opinion, "[i]n order to complete the elements of estoppel, the corporation would be required to show that it was prejudiced by [Waters'] misrepresentation." We concluded that the corporation had failed to demonstrate any detriment because it did not appear from the record that earlier knowledge of Waters' impending dissent would have materially altered the agreement with Pioneer Astro. We continue to adhere to this view. In fact, the alleged misrepresentation actually enabled the transaction to be consummated at a substantial benefit to the corporation. The fact that Waters later dissented and requested a substantial value for his shares does not transform his previous conduct into an estoppel. Our lead opinion notes that the cost to the corporation of Waters' conduct could have been limited by tendering to him the actual fair value of his shares before the transaction, or by commencing a judicial proceeding to determine the value, as provided by statute. If (as the corporation has contended) the shares before the transaction had virtually no value, the detriment suffered as a result of Waters' conduct would have been minimal but for the corporation's own failure to follow the statutory procedure regarding valuation of shares. The corporation cannot bootstrap its failure to follow statutory procedure into the detriment necessary to invoke the doctrine of estoppel.

Accordingly, the petition for rehearing is denied.

WALTERS, C.J., and HUNTLEY, J. Pro Tem., concur.