769 P.2d 582

E. Dale WATERS and Norma R. Waters, husband and wife, Plaintiffs–Respondents,

v.

DOUBLE L, INC., a/k/a Double "L" Mfg., Inc., Defendant–Appellant.

No. 17709.

Supreme Court of Idaho.

Feb. 17, 1989.

Hawkes, Esplin & Morgan, Pocatello, for defendant-appellant. Lowell N. Hawkes argued.

Green, Service, Gasser & Kerl, Pocatello, for plaintiffs-respondents. Clark Gasser argued.

Before SHEPARD, C.J., and BAKES, BISTLINE and JOHNSON, JJ.

PER CURIAM.

This case was appealed from the trial court's summary judgment awarding Dale and Norma Waters $60,825.00, together with pre-judgment and post-judgment interest. This was the amount demanded by Dale and Norma as dissenting shareholders in Double L, Inc. because of the sale of substantially all of the property and assets of the corporation and because of the alteration of the preemptive rights of shareholders. In the summary judgment the trial court also dismissed with prejudice Double L's counterclaim alleging that Dale and Norma had breached their fiduciary duties to Double L and their contractual agreements with the corporation.

We assigned the case to the Court of Appeals, which issued an opinion affirming the summary judgment of the trial court. *Waters v. Double L, Inc.*, 114 Idaho 256, 755 P.2d 1294 (Ct.App.1987). The Court of Appeals held that the dissenters' rights of *Dale* and Norma under I.C. §§ 30–1–80(a)(2) and 30–1–80(a)(4)(iii) were triggered by the sale of substantially all of Double

L's assets and by the modification of preemptive rights. The Court of Appeals also concluded that Dale and Norma were not estopped from asserting their rights and that Double L did not substantially comply with the dissenters' rights of Dale and Norma. The Court of Appeals noted that Double L had cited no authority that a minority stockholder who is also a director has a fiduciary duty to vote his stock for the benefit of the corporation and the other shareholders, rather than himself. The Court of Appeals denied rehearing and issued an addendum to their opinion. We granted review of the decision of the Court of Appeals at the request of Double L.

We have reviewed and considered the briefs, the record, the depositions, the exhibits to the depositions, and the opinion of the Court of Appeals together with the addendum on denial of rehearing. Based on this review and consideration, we concur with the decision of the Court of Appeals, but offer one clarification and a minor correction.

I.

## FOR CLARIFICATION, THE DISMISSAL OF DOUBLE L's COUNTERCLAIM IS SPECIFICALLY AFFIRMED.

■ The notice of appeal and statement of issues of Double L clearly presented as one of the issues to be resolved in this case the dismissal by the trial court of the counterclaim of Double L alleging the breach by Dale and Norma of fiduciary duties to Double L and their contractual agreements with the corporation. In its initial brief on appeal, Double L asserted that Dale's "conduct presented genuine issues as to whether he breached his fiduciary duty to the corporation and shareholders and whether that made available the defense of equitable estoppel and justified Double L's Counterclaim."

We cannot discern in the decision of the Court of Appeals where this issue was considered specifically. We note that in discussing the issue of estoppel the Court of Appeals stated: "The corporation has cited no authority to support the proposition that

a director has a fiduciary duty to vote his minority stock for the benefit of the corporation and of the other shareholders, rather than for himself." *Id.* at 263, 755 P.2d at 1301. We also note that the Court of Appeals affirmed the summary judgment of the trial court without any reservation or exception. *Id.* We construe the decision of the Court of Appeals implicitly to include a rejection of the legal theory of Double L's counterclaim. For clarification, we specifically affirm the trial court's dismissal of the counterclaim based on the reasoning of the Court of Appeals in that portion of its opinion dealing with Double L's argument that Dale engaged in "conduct equitably barring him and his wife from invoking any statutory rights as dissenters." *Id.* at 263–65, 755 P.2d at 1301–03.

Double L cites as authority in support of the theory of its counterclaim the decision of this Court in *Hanny v. Sunnyside Ditch Co.*, 82 Idaho 271, 353 P.2d 406 (1960). We note that the statement of the duty of directors in *Hanny* was drawn from I.C. § 30–142 (1948). This statute was repealed in 1979 when the Idaho Business Corporation Act was adopted. 1979 Idaho Sess. Laws, ch. 105. I.C. § 30–1–35 became effective on July 1, 1979. The pertinent part of this statute provides:

> A director shall perform his duties as a director, including his duties as a member of any committee of the board upon which he may serve, in good faith, in a manner he reasonably believes to be in the best interests of the corporation, and with such care as an ordinarily prudent person in a like position would use under similar circumstances.

This is the standard of fiduciary duty by which Dale's conduct in this case must be measured.

In its memorandum decision dismissing Double L's counterclaim, the trial court stated:

> In this case, there is no evidence that Dale Waters acted in any manner other than in good faith when he voted in favor of the transaction at the special director's meeting. It is apparent, however, from the statements contained in his deposition that he did not favor the transaction and, at least a few weeks prior to the stockholders meeting, had determined to dissent from the very transaction he supported as a director.
>
> . . . .
>
> [Double L] states that because Dale Waters participated in the negotiations for the sale of Double L, he "cannot now use his inside position to obtain a windfall profit at the expense of the other shareholders." There is no evidence [Dale] ever attempted to do so. There is no suggestion, for example, that Dale Waters acted in any manner but in the best interests of the corporation when he agreed at the director's meeting to vote for the transaction. Furthermore, it appears that any windfall visiting upon [Dale and Norma] must necessarily arise from [Double L's] failure to comply with the procedures outlined in *Idaho Code* Sec. 30–1–81.

With this clarification and in light of I.C. § 30–1–35, we concur with the trial court's analysis of this issue and affirm the dismissal of the counterclaim.

## II.

## CORRECTION AS TO THE REPURCHASE OPTION.

We also believe that a minor correction in the opinion of the Court of Appeals is necessary. One portion of the contract of sale between Double L and Pioneer Astro provided:

> 10. *Repurchase Option.* During the period January 1, 1984 through January 1, 1989, and for a period of six months after the termination of employment of any shareholder employee, any person who was a minority shareholder on September 1, 1982 may tender such shareholder's stock to Double L, Inc. and Double L, Inc. shall purchase such shares.

In discussing the relation of this provision to the dissenters' rights statutes the Court of Appeals stated:

> Dale Waters' rights under this provision differed substantially from his statutory rights. First, the contract allowed him to exercise his "repurchase option" only if he was terminated from his job. Second, the option was not effective until

January 1, 1984, fifteen months after the contract was executed.

114 Idaho at 266, 755 P.2d at 1304.

This characterization by the Court of Appeals of the repurchase option provision is somewhat incorrect. As we read this portion of the contract, it allowed Dale to exercise his repurchase option (1) for a period of six months after the termination of his employment, and also (2) during the period from January 1, 1984 through January 1, 1989. However, we do not consider this difference in our reading of the terms of the repurchase option to affect the substance of the decision of the Court of Appeals rejecting the repurchase option as constituting substantial compliance with the dissenters' rights statutes.

### III.

### CONCLUSION.

The summary judgment of the trial court is affirmed on the basis of the opinion of the Court of Appeals, with the clarification and correction noted above.

Costs to respondents.

No attorney fees on appeal.

HUNTLEY, J., sat, but did not participate.