VOELLER ET AL. *v.* NEILSTON WAREHOUSE CO.
ET AL.

No. 97.  Submitted December 18, 1940.—Decided January 6, 1941.

*Messrs. Carrington T. Marshall* and *Orland R. Crawfis* submitted for petitioners.

*Mr. Francis J. Wright* submitted for respondents.

Mr. Justice Black delivered the opinion of the Court.

We granted certiorari in this case to review a decision of the Supreme Court of Ohio invalidating a state statute on the ground that it constituted a denial of procedural due process guaranteed by the Fourteenth Amendment.[1] The statute in question provided that the value placed upon his stock by a dissenting shareholder should, after six months and under certain circumstances, "conclusively be deemed to be equal to" the fair cash value.[2] The state court held that since the statute required that the demands of the dissenters be made known only to the corporation, the majority shareholders were unconstitutionally deprived of property without notice and an opportunity to be heard.

Concretely, the question was raised here in the following manner: Petitioners, holders of stock in respondent corporation, were among those who dissented when a vote was called on a sale of substantially all the corporate assets. Two-thirds of the shareholders voted for the sale, which was thereupon consummated. Petitioners gave written notice to the corporation of their objection, the number of shares they held, and the claimed fair cash value of their stock. The corporation refused in writing to pay the amount asked, but made no counter-

---

[1] 136 Ohio State 427, 26 N. E. 2d 442.

[2] Ohio Code Ann. (Throckmorton, 1940) § 8623-72, paragraph 7.

offer. Neither party filed a petition for appraisal. After six·months had elapsed, petitioners filed suit in the Court of Common Pleas, asking that judgment be rendered in their favor for the amounts originally claimed.

All of these proceedings were in accordance with the applicable Ohio law.[3] In their suit, petitioners relied on a section of that law which provided that the value claimed by the dissenting shareholders should "conclusively be deemed to be equal to" fair cash value if the corporation had neither made a counter-offer nor requested an appraisal.[4] One of the majority shareholders filed an intervening petition on behalf of herself and all other shareholders similarly situated, alleging that the section of the statute involved was unconstitutional. A judge of the Court of Common Pleas struck out this intervention at the request of petitioners, saying that the statute was constitutional, the petition for intervention irrelevant, and the majority shareholders without standing to intervene.[5] No appeal was taken from this ruling. When the case came on for trial on the merits, a different judge sat, and it was his opinion that the statute was unconstitutional. The Court of Appeals, one judge dissenting, reversed the trial court, and was itself reversed, two judges dissenting, by the Supreme Court of Ohio.

---

[3] Ohio Code Ann. (Throckmorton, 1940) §§ 8623–65; 8623–72.

[4] The exact language is: "If such petition [for appraisal] is not filed within such period, the fair cash value of the shares shall conclusively be deemed to be equal to the amount offered to the dissenting shareholder by the corporation if any .such offer shall have been made by it as above provided, or in the absence thereof, then an amount·equal to that demanded by the dissenting shareholder as above provided."

[5] The judge said: "The failure to take advantage of the statutory provisions may result unfortunately for other stockholders, but their remedy would be against those directors who were derelict in their duty."

It was the opinion of the Supreme Court that the statute had "an unconstitutional operation against the majority stockholders, as being violative of the due process section of the Fourteenth Amendment to the federal Constitution." And the correctness of that conclusion is the only question properly before this Court. All other questions presented involve state law, for the conditions under which corporations shall organize and operate are matters within the exclusive province of the state, so long as those conditions do not clash with the national Constitution.

We agree with petitioner's position that notice to the corporation of the demand for payment constituted notice to the majority stockholders, and that such notice was an adequate compliance with the constitutional requirement of due process. The objective of the Ohio statute permitting the right of appraisal to dissenting shareholders was the elimination of abuses that had long been a fixture in the field of corporate finance.[6] To assure that the right to appraisal would be promptly resorted to and to provide for the contingency that in some cases no such resort would be taken, the Ohio legislature thought it advisable to provide that under some circumstances the original offer or counter-offer should

---

[6] At common law, unanimous shareholder consent was a prerequisite to fundamental changes in the corporation. This made it possible for an arbitrary minority to establish a nuisance value for its shares by refusal to coöperate. To meet the situation, legislatures authorized the making of changes by majority vote. This, however, opened the door to victimization of the minority. To solve the dilemma, statutes permitting a dissenting minority to recover the appraised value of its shares, were widely adopted. See S. E. C. Report on the Work of Protective and Reorganization Committees, Part VII, pp. 557, 590. The Ohio appraisal statute here in issue was not adopted until after respondent had acquired its charter, but the Ohio Constitution expressly reserves to the state the right to alter or repeal the corporate law. Ohio Const., Art. 13, § 2.

536

conclusively be deemed equal to the fair cash value. The corporation was given the right to avoid the effect of being compelled to pay the claimed value either by making a counter-offer or by requesting an appraisal. In addition, it was given the right to avoid both appraisal and payment of the claimed value by abandoning its original purpose to sell its assets. The dissenting shareholders could, by requesting an appraisal, likewise avoid accepting the corporation's counter-offer. Thus the corporation is compelled to pay or the dissenting shareholder to accept payment of the amount of the offer or counter-offer only if none of the many available alternatives are pursued before the expiration of a six-month period. The provisions, in effect, operate as statutes of limitations. After the lapse of a period of time, given defenses—attacks on value—can no longer be asserted.

It is true, as respondent urges, that after the majority authorizes the corporation to effect a sale, the alternatives are thereafter expressly open only to the corporation and the dissenters; no provision is made for notice to the majority shareholders as individuals. But the majority, by their vote approving the sale of assets, have indicated their intention to remain part and parcel of the corporation; the dissenters, on the other hand, by voting against the sale and by demanding payment, have indicated an intention to sever relationships. If thereafter the failure of the directors to make a counter-offer materially prejudices the financial stake of the majority, it is no more a want of due process to consider the majority bound thereby than it is to consider them bound by any other act of management. The majority are participants in a corporate enterprise. In entrusting their capital to the corporation, they accept the disadvantages of the corporate system along with its advantages. What claimed to be a disadvantage here is a necessary con-

comitant of the system and its most distinctive attri-
bute—representation of the collective interest of share-
holders by selected corporate management.

The constitutional issue is here raised for the majority
shareholders by the corporation, which admittedly itself
had notice. Exercising the very delicate responsibility of
passing upon the validity of state statutes, this Court has
many times declared the rule that only those who have
been injured as the result of the denial of constitutional
rights can invoke our jurisdiction on constitutional
questions.[7] Yet here the corporation would have us say
that it is sufficiently the representative of the majority
to raise in their behalf the constitutional issue, but not
sufficiently their representative to receive notice. We
hold that, so far as the constitutional requirement of due
process is concerned, it is in this case sufficiently their
representative for both purposes, and accordingly we find
it necessary to reverse the judgment below.[8]

There is nothing unusual in such a holding; the rights
of parties are habitually protected in court by those who
act in a representative capacity; an executor or adminis-
trator may act for the beneficiaries of an estate; a re-
ceiver may represent the collective interests of stock-
holders, partners, or creditors; a lawyer may appear for
his clients; and a corporation may represent the col-
lective interests of its shareholders. In this case, in fact,
the unappealed ruling of the trial judge on the attempted
intervention by the majority stands as an adjudication
that in those respects here material the majority had
committed their interests to the corporation itself.

*Reversed.*

---

[7] *Tyler* v. *Judges,* 179 U. S. 405; *Hendrick* v. *Maryland,* 235 U. S.
610, 621. And see Mr. Justice Brandeis, concurring, in *Ashwander* v.
*Tennessee Valley Authority,* 297 U. S. 288, 347–348, and cases there
cited.

[8] *Christopher* v. *Brusselback,* 302 U. S. 500, 504; cf. *Kersh Lake
Drainage District* v. *Johnson,* 309 U. S. 485, 491.