## O'Connor Appeal.

Argued January 21, 1971. Before BELL, C. J., JONES, EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

re-argument refused November 9, 1971.

*James P. Coho,* for appellant.

*Raymond W. Midgett, Jr.,* with him *Kenneth W. Gemmill, John I. Hartman, Jr., Dechert, Price & Rhoads,* and *Windolph, Burkholder & Hartman,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, October 12, 1971:

The appeal presents the question of whether an award made to a dissenting shareholder under §515 of the Business Corporation Law[1] was supported by competent evidence. We find that it was not, and accord-

---

[1] Business Corporation Law of May 5, 1933, P. L. 364, §515, as amended, 15 P.S. §1515. Subsection (A) gives this summary of the purposes of §515: "If any shareholder of a business corporation objects to any proposed plan of action of such corporation author-

ingly remand the record for a new determination of fair value.[2]

The majority shareholders of Watt & Shand, a Pennsylvania corporation, amended the corporation's articles of incorporation to eliminate cumulative voting. Appellant Laura Watt O'Connor, a dissenting shareholder, duly objected and demanded the fair value payment of her 813 shares of common stock.[3] Pursuant to the provisions of §515 the appellee, Watt & Shand, made an offer to pay the appellant $93.46 per share.[4]

---

ized under any section of this act, and such section provides that such shareholders shall be entitled to the rights and remedies of dissenting shareholders, such shareholders shall be entitled to the following rights and remedies." For a discussion on the mechanics of §515 see Mulford, Corporation Distributions to Shareholders and Other Amendments to the Pennsylvania Business Corporation Law, 106 U. Pa. L. Rev. 536, 563 (1958).

[2] In light of the disposition we reach on the above issue we do not pass on appellant's contentions that the trial court misallocated costs, that it erred in refusing to award appellant interest, and that the appraiser was biased in favor of the appellee. As to the last allegation, it is assumed, of course, that the trial court, if it selects an appraiser, will exercise the required degree of care to assure an impartial determination of fair value.

[3] Subsection (B) of §515 provides in part: "If any shareholder of a business corporation shall file with such corporation, prior to the commencement of the voting by shareholders upon the plan at the meeting of shareholders at which a plan is submitted to a vote, a written objection to such plan, and shall not vote in favor thereof, and such shareholder, within twenty days after the date on which the vote approving the plan was taken, shall also make written demand on the corporation . . . for the payment of the fair value of his shares, such corporation shall pay to such shareholder the fair value of his shares as of the day prior to the date on which the vote was taken. . . ."

[4] Subsection (D) of §515 provides in part: "Within thirty days after such plan became effective, the corporation . . . shall give written notice thereof to each dissenting shareholder who has made demand as herein provided, and shall make a written offer to each such shareholder to pay for such shares at a specified price deemed by such corporation to be the fair value thereof. . . ."

This offer was refused. The corporation then petitioned the court to determine the fair value of appellant's shares. Exercising its prerogative under §515 the trial court appointed an appraiser to receive evidence and make a recommendation as to the fair value of the dissenting shareholder's stock.[5] During the course of the hearings before the appraiser the respective parties presented experts whose testimony on the fair value of the shares ranged from $90 to $272. Following the conclusion of the hearings the appraiser in his report to the court recommended that the appellant be paid $84.56 per share. Appellant filed exceptions to the appraiser's report. The trial court dismissed the exceptions and adopted the findings of the appraiser. This appeal ensued.

Our review of this appeal encompasses only an ascertainment of whether the findings of the trial court are supported by competent and substantial evidence.[6] We reject appellant's request that we make an independent determination as to the fair value of her shares: "This Court does not sit as a trier of issues of fact expecting to be persuaded that one or the other side is more credible. That is only a task for a trial court and we would never invade that area of the judi-

---

[5] Subsection (F) of §515 provides in part: "The court may, if it so elects, appoint one or more persons as appraisers to receive evidence and recommend a decision on the question of fair value." For the standard methods of determining fair value in a shareholder's appraisal suit see Comment, Corporations—Appraisal Statutes—Elements in Valuation of Corporate Stock, 55 Mich. L. Rev. 689 (1957); Note, Valuation of Dissenter's Stock Under Appraisal Statutes, 79 Harv. L. Rev. 1453 (1966).

[6] " 'Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Davis, Administrative Law Treatise, Vol. 4 at 118 (1958), quoting from *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938). Such a definition is consistent with the scope of review we apply today.

cial process." *Reed v. Universal C.I.T. Credit Corporation,* 434 Pa. 212, 217, 253 A. 2d 101, 104 (1969). In doing so we are mindful of the admonition of one experienced commentator: "The questions involved [in a dissenting shareholder's appraisal suit] are rather economic than legal in character. . . . Such standards can better be derived by consulting the business man, the banker, and the industrial engineer, than the jurist, legal scholar, or lawyer."[7]

Section 515 is silent on the issue of appeal. This Court has recognized that such legislative silence is of significance in determining the nature of our certiorari: "If the statute controlling the proceedings fails to provide for an appeal or is silent thereto, a writ of certiorari to inspect the record is in the broadest sense, and the merits of the issue may be judicially reviewed: Cullen Appeal, 392 Pa. 602, 141 A. 2d 389 (1958), and Kaufman Const. Co. v. Holcomb, 357 Pa. 514, 55 A. 2d 534 (1947)." *Absentee Ballots Case,* 423 Pa. 504, 508, 224 A. 2d 197, 199 (1966).

The earlier statute governing dissenting shareholder's rights stated that the "judgment of the court thereon shall be final and conclusive."[8] We interpreted that statute as giving this Court a very narrow scope of review, but acknowledged that a different result would be in order if that phrase had been omitted: ". . . it is only where the statute is silent on the question of appeal that a review by certiorari may be had 'in the broadest sense' and the court may consider the record, including the testimony, to determine whether the findings are supported by *competent evidence* and to correct any conclusions of law erroneously made." (Em-

---

[7] Lattin, Remedies of Dissenting Stockholders Under Appraisal Statutes, 45 Harv. L. Rev. 233, 270 (1931-32).

[8] Business Corporation Law of May 5, 1933, P. L. 364, §515, as amended, 15 P.S. §1515.

phasis added.) *Lowry v. General Waterworks Corporation,* 406 Pa. 152, 155-56, 177 A. 2d 82, 84 (1962) quoting from *Dauphin Deposit Trust Company v. Myers,* 388 Pa. 444, 460, 130 A. 2d 686, 694 (1957).

The Legislature in superseding the old act with §515 deleted the phrase "the judgment of the court thereon shall be final and conclusive." In doing so it gave this Court broad certiorari review and the duty to determine whether the findings of the trial court are supported by competent and substantial evidence.

The Commonwealth's statutory protection of dissenting shareholders through the appraisal provision is in keeping with the practice across the country. Of the fifty-three jurisdictions which have corporation statutes, all but one make some provision for the rights of dissenting shareholders.[9] The purpose of these statutes is to protect the property rights of the dissenting shareholders from actions by majority shareholders which alter the character of their investment.[10]

Mindful, then, that we are reviewing a record in which an individual is seeking redress from an allegedly insufficient computation of the fair value of her property, we have engaged in a careful examination of the record. As stated earlier the lowest fair value suggested during the course of the hearing was $90. Prior to the hearing the corporation had offered the dissenting shareholder $93.46 per share. Notwithstanding these facts the appraiser submitted without explanation his recommendation that the fair market value was $84.56. As there is not evidence to support this lower figure, we cannot conclude that the trial court's ac-

---

[9] Manning, The Shareholder's Appraisal Remedy: An Essay for Frank Coker, 72 Yale L.J. 223, 226 (1962).

[10] "In political terms these statutes fill a basic democratic need to protect a dissident minority from the overwhelming power of the majority." Id.

212

ceptance of the appraiser's recommendation is supported by competent and substantial evidence. We thus vacate the trial court's judgment and remand for a new determination of fair value consistent with this opinion.