George **BRENIMAN, Plaintiff–Appellee and Cross–Appellant,**

v.

**AGRICULTURAL CONSULTANTS, INC., Defendants–Appellants and Cross–Appellees,**

and

**Dean Lansing, Natalie Lansing, and AER, Inc., Defendants– Cross–Appellees.**

No. 90CA1088.

Colorado Court of Appeals, Div. III.

March 12, 1992.

Michael P. Dugan, Greeley, for plaintiff-appellee and cross-appellant.

Pepper & Rubin, P.C., Larry M. Snyder, Denver, for defendants-appellants and cross-appellees.

J. Bruce Teichman, Denver, for defendants-cross-appellees.

Opinion by Judge DUBOFSKY.

Defendant Agricultural Consultants, Inc., (ACI) appeals the judgment entered after a bench trial requiring it to pay to plaintiff, George Breniman, $59,713.29, which represents the amount he demanded for his preferred stock in an April 24, 1986, letter. Plaintiff also brought a separate stockholder derivative claim against defendants Dean and Natalie Lansing and AER, Inc. for "looting." The trial court dismissed this action. We affirm.

## I.

Defendant argues that the fixed redemption value of its preferred stock is a

contractually agreed upon amount which prevents plaintiff from obtaining a higher or "fair value" as provided under § 7–4–123 and § 7–4–124, C.R.S. (1986 Repl.Vol. 3A). Defendant implicitly argues that the appraisal statutes are inapplicable if, as here, the stockholder's shares have a set redemptive value. In response, Breniman, a dissenting stockholder, claims that ACI, because of its sale of the corporate assets, under § 7–4–123 and § 7–4–124, C.R.S. (1986 Repl.Vol. 3A), owed him the fair value, not the redemption value, for his preferred stock. We agree with plaintiff.

At common law, the unanimous consent of the shareholders was necessary before a corporation could undertake certain corporate acts, including those referenced in § 7–4–123 and § 7–4–124. *See Voeller v. Nelson Hardware Co.*, 311 U.S. 531, 61 S.Ct. 376, 85 L.Ed. 322 (1941). In response to the modern needs of corporations, statutes were passed changing the common law and permitting such transfers when less than unanimous approval of shareholders was obtained, *i.e.*, a majority vote. With this statutory change also came a recognition that dissenters' interests must be protected in situations in which fundamental changes in the corporation occurred. As a result, additional legislative enactments were passed that gave the dissenters the right to receive the value of their stock and to provide for an appraisal if no agreement as to value could be reached. The statutes are known as appraisal statutes. W. Fletcher, *Cyclopedia of Corporations* § 5906.1 (1984).

Here, ACI held a stockholders' meeting and voted to sell the assets of the corporation. The plaintiff dissented from that decision. Pursuant to § 7–4–123(1)(b) and § 7–4–124(3), C.R.S. (1986 Repl.Vol. 3A), plaintiff demanded payment for his shares in ACI.

In response, ACI issued him a check for $15,660, an amount equal to the redemptive value of $1.00 per share of the stock as set forth in the Agricultural Consultants Amended Articles of Incorporation. Pursuant to § 7–4–124(7), C.R.S. (1986 Repl.Vol. 3A), plaintiff by letter then requested additional or supplementary payment in the total amount of $59,713.29 which represented his estimated value of his stock.

In order to contest the amount of plaintiff's demand for payment under § 7–4–124(8)(a), defendant was required to bring a court action within 60 days of receiving plaintiff's demand for additional payment. Under these statutes, defendant's failure to so act within 60 days effectively waived its right to dispute the amount of plaintiff's evaluation.

The critical question here is whether the fixed redemption price set by the corporation precludes plaintiff from obtaining fair value for his preferred stock under § 7–4–123 and § 7–4–124. We conclude it does not.

Section 7–4–123(1)(b) permits a shareholder who dissents from the corporation's sale of all or substantially all of the corporation's property to obtain fair value for his stock. Section 7–4–124(1)(c), C.R.S. (1986 Repl.Vol. 3A) states:

Fair value means the value of shares immediately before the effectuation of the corporate action to which the dissenter objects, excluding any appreciation or depreciation in anticipation of such corporate action, unless such exclusion would be inequitable.

There is no indication in either § 7–4–123 or § 7–4–124 that a shareholder's right to obtain fair value is limited if there is an existent redemptive value. It therefore appears that "fair value" is akin to fair market value, which is the value a shareholder would receive for his stock if he were able to sell it in an arms-length transaction. *See Connell v. Sun Exploration & Production Co.*, 655 P.2d 426 (Colo. App.1982); *State v. Cooper Alloy Corp.*, 136 N.J.Super. 560, 347 A.2d 365 (1975).

It is the extraordinary actions of the corporation in selling off its property which permit a shareholder to invoke § 7–4–123 and § 7–4–124 to obtain fair value payment for his shares. This is a very different situation than a redemptive purchase of stock by the corporation.

Defendant has failed to direct our attention to any provision of the corporation code which authorizes the articles of incorporation to supersede the requirements of the appraisal statutes. *Cf.* § 7–4–118, C.R.S. (1986 Repl.Vol. 3A) (articles of incorporation may change voting requirements).

Furthermore, the fair value of a party's preferred stock could be, in certain circumstances, less than the amount fixed by the corporation. Thus, in some situations, the fair value criteria would be of economic benefit to the corporation. Obviously, the fixed redemptive value of the stock would be an important factor in determining fair value for the preferred stock. Finally, as previously indicated, the plain language of § 7–4–124 indicates that fair, not redemptive, value should be paid for the stock in this situation. *See generally* W. Fletcher, *Cyclopedia of Corporations* § 5906.1, et seq. (1984) (suggesting that the appraisal method of compensating preferred shareholders is generally followed even if there is a fixed redemptive value on the stock).

### II.

Defendant next argues that the evidence does not support the trial court's conclusion that proper notice was provided to the corporation of the plaintiff's demand for additional payment. We disagree.

■ We conclude that the evidence in the record supports the trial court's determination that adequate notice was provided to defendants. In particular, the signed return receipt from the Post Office is clear that the April 24 demand letter was mailed to the corporate headquarters. The evidence shows that a person who was closely connected to ACI and the other defendants signed for the letter and indicated that he had passed it on to them. For these reasons, we conclude that the evidence supports the trial court's determination that notice was properly sent to and received by defendants. *See Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979).

### III.

Defendant next argues that the statutory scheme of § 7–4–123 and § 7–4–124 violates the Equal Protection Clause of the Fourteenth Amendment because the statutes fail to recognize a distinction between preferred stock with a set redemptive value and other types of stock without such a value.

■ It is not clear from defendant's argument if the constitutional attack is directed to the facial unconstitutionality of these statutes or is an attack on the statutes' constitutionality as applied in this case. To the extent defendant's argument attacks the facial constitutionality of the statutes, this court is without jurisdiction to pass on this claim. *See* § 13–4–102, C.R.S. (1987 Repl.Vol. 6A).

To the extent that defendant argues the statutes are unconstitutional as applied because they permit plaintiff to recover compensation for his preferred stock beyond the redemptive amount set by the corporation, this court has jurisdiction. *See* § 13–4–102. However, we disagree with defendant's argument in this regard.

■ Defendant appears implicitly to argue that § 7–4–123 and § 7–4–124 are unconstitutional as applied to preferred stocks with a set redemptive value because such stocks are different from common stock without a redemptive price and that to treat stocks which are so dissimilar the same violates the Equal Protection Clause. We perceive no equal protection violation.

■ In the area of governmental economic regulation, a challenge to a governmental regulatory statute will be struck down only if no conceivable set of facts can establish a rational relationship between the act and a legitimate end of government. *Colorado Society of Community & Institutional Psychologists, Inc. v. Lamm,* 741 P.2d 707 (Colo.1987). The primary purpose of these "appraisal" statutes is to protect the property rights of dissenting shareholders from actions by majority shareholders which alter the character of their investment. *See In re Watt & Shand,* 444 Pa. 206, 283 A.2d 279 (1971).

In our view, the state's interest in fairly compensating a dissenting shareholder,

who under contemporary corporate statutes no longer has the power to prevent fundamental changes of the corporation, provides a rational basis for requiring fair value payment to all shareholders, including those with preferred stock. *See* W. Fletcher, *Cyclopedia of Corporations* § 5906.1 (1984).

### IV.

On cross-appeal, Breniman argues that the trial court erred in dismissing his first three claims for relief by application of the election of remedies doctrine. While we agree that the election of remedies doctrine is inapplicable here, we further conclude that the trial court correctly dismissed plaintiff's first three claims since, at the time, he was no longer a stockholder and had no standing to maintain the derivative law suit.

 Election of remedies is defined as the act of choosing between two or more different and co-existing modes of procedure and relief allowed by law on the same set of facts. The concept applies when different remedies, based on the same set of facts, are provided for a given wrong. *Robinson v. Armstrong*, 90 Colo. 363, 9 P.2d 481 (1932). The purpose of the doctrine is to prevent double recovery by the innocent party for the wrong done to him. *Stewart v. Blanning*, 677 P.2d 1382 (Colo. App.1984).

 Here, the plaintiff's first three claims for relief were directed at certain individual and corporate actions in transferring corporate assets beginning in 1979. Based on allegedly improper actions then and thereafter, plaintiff requested alternative relief as to those acts in claims 1, 2, and 3. Plaintiff's fourth claim for relief asserted his right of appraisal for his preferred stock because the corporation sold off substantially all of its property in 1985. The conduct in dispute thus presents distinct separate facts and wrongs, and therefore, the trial court improperly required plaintiff to dismiss the first three claims for relief under the election of remedies doctrine.

 However, once plaintiff surrendered his stock to the corporation, he was no longer a shareholder and, therefore, did not have standing to pursue his stockholder derivative suit. *See Lewis v. Chiles*, 719 F.2d 1044 (9th Cir.1983).

Defendant also argues that since he is presently a judgment creditor, he can pursue claims against defendants Dean and Natalie Lansing and AER, Inc., for their alleged wrongful actions in "looting" ACI. But, since this issue is raised for the first time on appeal, we will not address it. *See Federal Deposit Insurance Corp. v. Cassidy*, 779 P.2d 1382 (Colo.App.1989).

The parties' other contentions are without merit.

Judgment affirmed.

RULAND, J., concurs.

TURSI, J., specially concurs.

Judge TURSI, specially concurs.

The plaintiff contends that defendant is bound to pay the amount plaintiff claimed as fair value pursuant to § 7–4–124(8)(a) & (f), C.R.S. (1986 Repl.Vol. 3A). I agree.

As pertinent here, § 7–4–124(8) reads:
(a) Within sixty days after receiving a demand for payment pursuant to subsection (7) of this section, if any such demand for payment remains unsettled, the corporation *shall* file in an appropriate court a petition requesting that the fair value of the shares and interest thereon be determined by the court.

. . . .

(f) If the corporation fails to file a petition as provided in paragraph (a) of this subsection (8), each dissenter who had made a demand and who has not already settled his claim against the corporation *shall be paid by the corporation the amount demanded* by him with interest and may sue therefor in an appropriate court. (emphasis supplied)

It is not seriously disputed that plaintiff complied with subsection (a) and that defendants failed to comply with subsection (f). Defendants have failed to proffer any

satisfactory reason why these provisions of the controlling statute should not apply. Therefore, I would affirm the judgment.

However, because I am unable to agree with the majority's holding on the valuation of the preferred shares at issue here, I write separately.

Pursuant to § 7–2–102(1)(f), C.R.S. (1986 Repl.Vol. 3A), the relative rights and preferences of the preferred shares held by plaintiff are set forth in defendant's articles of incorporation. The redemption price of plaintiff's shares is clearly set forth as provided in § 7–4–102(2)(b), C.R.S. (1986 Repl.Vol. 3A) at $1 per share. Hence, pursuant to § 7–4–124(1)(c), C.R.S. (1986 Repl.Vol. 3A), relied upon by the majority, the fair value of these shares *immediately before the effectuation* of the corporate action was $1.00 per share.

I agree that if incorporators wish to authorize the issuance of preferred shares with redemptive rights comparable to those normally held only by common shares that may be done by proper inclusion in the articles of incorporation. *See* §§ 7–2–102(1)(f) & 7–4–102(2)(b). However, this is not the case before us.

Therefore, absent specific provisions in the articles of incorporation and proper endorsement on the face of the preferred shares, I reject the rule adopted by the majority and would not follow it.