J-A12039-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| KEITH A. SHAFFER, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| VISAGGIO'S, INC., | : | |
| | : | |
| Appellant | : | No. 1959 MDA 2014 |

Appeal from the Order entered October 20, 2014,
Court of Common Pleas, Cumberland County,
Civil Division at No. 2009-02122

BEFORE:  BOWES, DONOHUE and ALLEN, JJ.

DISSENTING MEMORANDUM BY DONOHUE, J.:          **FILED JULY 29, 2015**

Based upon my review of the certified record on appeal, I must respectfully dissent.  In this case, William A. Duncan ("Duncan"), a statutorily-appointed appraiser, received evidence and issued a report to the trial court analyzing the fair value of the stock owned by dissenting shareholder and appellee, Keith A. Shaffer ("Shaffer"), in appellant, Visaggio's, Inc. ("Visaggio's).  In my view, the trial court erred in adopting Duncan's report, as it is unsupported by any evidence in the certified record.

During the evidentiary proceedings before Duncan, Shaffer and Visaggio's each called real estate and business valuation experts to present reports and offer supporting testimony.[1]  To understand the reports and

_____

[1]  The parties also called separate expert witnesses regarding the proper valuation of Visaggio's real property.  Because on appeal neither party has

testimony of the business valuation experts, it is important to review the applicable law relevant to the determination of the fair value of a dissenting shareholder's stock. In ***In re Glosser Bros., Inc.***, 555 A.2d 129 (Pa. Super. 1989), this Court distilled and explained at length the basic valuation principles described in ***O'Connor Appeal***, 304 A.2d 694 (Pa. 1973). In ***O'Connor***, our Supreme Court instructed that "fair value" for a dissenting shareholder's stock refers to going concern value (i.e., the value of the business as a continuing enterprise, without regard to the effects of the impending merger), rather than liquidation value (i.e, the amount that could be obtained by selling the corporation's remaining assets upon a cessation of business operations). ***Id.*** at 698. In ***Glosser Bros.***, this Court described the proper methodology to determine the going concern value of a dissenting shareholder's stock as follows:

> The "going concern" concept of fair value in a dissenting shareholders' appraisal proceeding and the many individual factors comprising it were aptly described by the Delaware Supreme Court in ***Tri–Continental Corp. v. Battye,*** 74 A.2d 71, 76 (Del. 1950):
>
>> The basic concept of value under the appraisal is that the stockholder is entitled to be paid for that which has been taken from him, viz., his proportionate interest in a going concern. By value of the stockholder's proportionate interest in the corporate

---

disputed the trial court's adoption of Duncan's real estate valuation, I will not address any such issues herein.

enterprise is meant the true or intrinsic value of his stock which has been taken by the merger. In determining what figure represents this true or intrinsic value, the appraiser and the courts must take into consideration all factors and elements which might reasonably enter into the fixing of value. Thus, market value, asset value, dividends, earning prospects, the nature of the enterprise and any other facts which were known or which could be ascertained as of the date of the merger and which throw any light on future prospects of the merged corporation are not only pertinent to any inquiry as to the value of the dissenting stockholders' interest, but must be considered by the agency fixing the value.

*Id.* at 72.

The **O'Connor** [C]ourt noted that courts had properly distilled all of these factors into three principal valuation methods, i.e. (1) net asset value; (2) actual market value; and (3) investment value. The court defined these valuation methods as follows:

**Net Asset Value** is the share which the stock represents in the value of the net assets of the corporation. Such assets include every kind of property and value, whether realty or personalty, tangible and intangible, including good will and the corporation's value as a going concern.

**Investment Value** is an estimate of present worth in light of past, present and prospective financial records of the company and is obtained by capitalizing earnings. There are two basic steps in

the capitalization process: calculation of a representative annual earnings figure, and choice of a capitalization ratio which reflects the stability and predictability of earnings of the particular corporation.

**Market Value** refers to the price at which the stock was selling on the market prior to the action which is objected to, disregarding any change in price due to the action.

[***O'Connor***, 304 A.2d at 698 n.7]

***Glosser Bros.***, 555 A.2d at 133-34.

Expanding upon the valuation methods described in ***O'Connor***, in ***Glosser Bros.*** we offered the following additional discussion of appropriate valuation methodology in this context:

[W]e do not read the ***O'Connor*** opinion as limiting a trial court to a consideration of only these three valuation methods. ***Id.*** at [] 697–98. Financial analysis has become increasingly complex with the passage of time. New methods of valuing investments have been developed and are generally accepted in the financial community as being reliable. In recognition of this fact, other jurisdictions that previously restricted a trial court to the foregoing three valuation methods have now expanded the types of valuation information that may be considered in a stock valuation proceeding. For example, in ***Weinberger v. UOP, Inc.***, 457 A.2d 701 (Del. 1983), the Supreme Court of Delaware, known for its expertise in these matters, directed that Delaware courts would no longer be bound to use only the traditional "Delaware block" or weighted average approach to valuation. By this method, which is still generally in use in Pennsylvania and which was applied by the trial court in the instant case, the court considers only the

three traditional methods of valuation, assigns each a percentage weight and adds the resulting amounts to come to a total value. The **Weinberger** court found this approach too restrictive and directed that courts henceforth use a "more liberal approach [which] must include proof of value by any techniques or methods which are generally considered acceptable in the financial community and otherwise admissible in court...." **Id.** at 712–13.

**Glosser Bros.**, 555 A.2d at 134.

To summarize, pursuant to **Glosser Bros.**, going concern value is determined by using the "Delaware Block" method, whereby the trial court employs a "weighted average approach to valuation," assigning a percentage of weight to the net asset value, investment value, and market value of the company to arrive at the fair value of the company.[2] **Id.** at 133-34. In accordance with **Weinberger**, however, where the Delaware Block method would be too restrictive under the specific circumstances presented, a trial court in appropriate cases may instead utilize "any techniques or methods which are generally considered acceptable in the financial community and otherwise admissible in court." **Id.**

---

[2] **Glosser Bros.** presented an unusual situation in which 50-60% of the corporation's stock was closely held by management and family while the remaining stock was publicly traded. **Id.** at 131. The trial court applied the Delaware Block approach, but decided not to include the market approach and instead weighted the net asset value at 65% and the investment value at 35%. **Id.** at 136. This Court reversed, concluding that the trial court erred in excluding market value from its calculation, since although public trading was thin, there was no evidence of market manipulation or control to justify ignoring market value entirely. **Id.** at 135-36. In reversing, we remanded the case with instructions to assign a weight to the market value and include it in the valuation analysis. **Id.** at 136.

With these valuation principles in mind, in this case two business valuation experts offered reports and testimony on the going concern value of Visaggio's' stock at the evidentiary proceedings before Duncan. William Boles ("Boles"), a business valuation expert retained by Visaggio's, testified regarding the findings set forth in his report. Boles described his valuation methodology to determine the going concern value of Visaggio's' stock as follows:

> In our valuation of Visaggio's, Inc., we considered all three approaches to value. Under the income approach, we utilized the capitalized earnings method. Under the market approach, we utilized the market value of invested capital to sales method. Under the asset approach, we used the formula method (also known as the excess earnings method), which computes a goodwill factor.

Visaggio's, Inc. Valuation of Common Stock, 12/31/2007, at 42 (Exhibit 11). For the income value, using the capitalized earnings approach, Boles utilized a weighted average of annual net income from 2004-2007 ($22,180) and applied a capitalization rate of 21.80% to arrive at a "[t]otal indicated value before contingent liability" of $101,743. *Id.* at Exhibit 11, Schedule 2. For the market value, using the invested capital to sales method, Boles computed a weighted average of annual sales for the years 2004-2007 ($1,434,542) and applied an industry multiple (.34) to arrive at an "[i]ndicated value of operating assets plus goodwill" of $487,714. *Id.* at Exhibit 11, Schedule 3. For the net asset approach, Boles used the formula

method to calculate the value of the company's goodwill ($6,586). *Id.* at Exhibit 11, Schedule 5. He then added the shareholders' equity from the financial statements (-$148,268) with the net value of the real estate ($333,237) and goodwill, to arrive at a "[t]otal indicated value before contingent liability" of $191,555. *Id.* at Exhibit 11, Schedule 4. Because all three of these valuations were dwarfed by contingent liabilities for unpaid wages and unfunded pension obligations of $1.3 million,[3] however, Boles concluded that the value of Visaggio's' stock was $0. *Id.* at 6, Exhibit 11, Schedules 2-4.

Shaffer offered the testimony of business valuation expert James Smelzer ("Smelzer"). Smelzer testified that in general he found Boles' approach to be "reasonable." N.T., 1/13/2010, at 97. As a result, Smelzer did not perform his own independent valuations, and instead used Boles' numbers as the baseline for his going concern valuations. Smelzer modified Boles' net asset, investment, and market valuations by making four material modifications: (1) he used the real estate valuation from Shaffer's expert; (2) he adjusted the shareholders' equity (book value) from (-$148,268) to (-$119,465); (3) he added $111,747 in non-operating assets (marketable securities) that Boles excluded; and (4) he disagreed with any deductions for unpaid wages and/or unfunded pension obligations. Comparison of Expert Appraiser's Reports, 12/11/2009, Exhibit D. Of the

---

[3] I agree with the Majority's thoughtful analysis on this issue.

three methods utilized by Boles, Smelzer found the invested capital to annual sales method to be "the most appropriate approach" for Visaggio's, N.T., 1/13/2010, at 131, and using Boles' baseline number of $487,714 and applying the four modifications, he valued Visaggio's' stock at $799,461, with Shaffer's 25% interest thus equaling to $199,865.

After receiving testimony on January 13-14, 2010 and June 4, 2010, Duncan conducted a view of Visaggio's' property and operations on July 27, 2010, at which time he requested that Visaggio's produce its insurance policies. Thereafter, on November 1, 2010, Duncan filed his report with the trial court, in which he offered the following straightforward recommendation:

### VII. APPRAISER'S FINDINGS

1. Valuation of Real Estate - $1,800,000.00

The hotel rooms and liquor license should be considered but not to the extent promoted by Shaffer's appraiser for the reasons presented by the Lamadues.

2. Business Equipment - $325,000

The insurance coverages were considered together with the Appraiser's view of the premises. The equipment is used, readily available, not unique and in some cases, very dated.

Report of Appraiser, 11/1/2010, at 13.

By order and opinion dated October 20, 2014, the trial court adopted Duncan's valuation without modification, concluding that it "bear[s] a reasonable relationship to the values established by the parties' experts and

is clearly supported by substantial evidence." Trial Court Order and Opinion, 10/20/2014, at 7. After subtracting the $1.6 million debt on the real estate, the trial court concluded, based solely on Duncan's report, that the value of Visaggio's' real estate was $200,000, the value of its business equipment was $325,000, and Shaffer's 25% share of the total value of $525,000 was thus $131,250. *Id.*

On appeal, Visaggio's contends that the trial court erred in adopting Duncan's valuation of $325,000 for its business equipment. According to Visaggio's, during the evidentiary proceedings, neither party submitted any evidence on the value of the business equipment and the business valuation experts did not assign any value to the equipment. Visaggio's' Brief at 15. As a result, Visaggio's contends that the $325,000 valuation is not supported by any evidence of record.[4] *Id.*

I agree with Visaggio's that the trial court's finding that the value of Visaggio's business equipment at the time of the merger was $325,000 is unsupported by any competent and substantial evidence of record. The trial court appointed Duncan pursuant to section 1579(c) of the Business

---

[4] Visaggio's also argues that Duncan's viewing on July 27, 2010 and the insurance policies he subsequently received were both de hors the evidentiary record because the evidentiary record closed on June 4, 2010 (the final day of testimony). Visaggio's Brief at 15-17. On this issue, I agree with the Majority that there is no basis in the certified record on appeal to conclude that the evidentiary record before Duncan was closed at the time of the viewing and the receipt of the insurance policies. Maj. Memorandum 9-10.

Corporations Law, which provides in relevant part that "[t]he court may appoint an appraiser to receive evidence and recommend a decision on the fair value." 15 Pa.C.S.A. § 1579(c).[5] Although apparently never addressed by our appellate courts, pursuant to this provision a trial court could presumably appoint an expert in business valuation, who would then receive evidence necessary and relevant to perform a **Glosser Bros.**-type going concern analysis (e.g., financial statements), and prepare a fair value recommendation to the trial court based upon this evidence. In the present case, however, Duncan is an attorney and the certified record contains no indication that he has any expertise or qualifications as a business valuation expert.[6] As such, Duncan's proper role here was more akin to that of a special master,[7] namely to receive evidence in the form of conflicting expert

---

[5] Section 1579(c) further provides that the appointee "shall have such power and authority as may be specified in the order of appointment or in any amendment thereof." **Id.** In its order appointing Duncan, the trial court did not confer any special power or authority on him, instead merely directing that he "make a recommendation to the court as to the value of the stock." Trial Court Order, 6/1/2009, at 1.

[6] In its order and opinion adopting Duncan's report, the trial court cites to our Supreme Court's admonition that valuation issues in dissenting shareholder litigation are "rather economic than legal in character" and thus can "better be derived by consulting the business man, the banker, and the industrial engineer, than the jurist, legal scholar, or lawyer." Trial Court Opinion, 10/20/2014, at 3-4 (quoting **Watt & Shand**, 283 A.2d 279, 280-81 Pa. 1971)).

[7] For example, in divorce or annulment proceedings, Rule 1920.51 of the Pennsylvania Rules of Civil Procedure provides that the trial court may

testimony on the going concern value of the stock and make a recommendation to the trial court based upon that evidence.

Duncan clearly failed to fulfill his proper role. While he did receive evidence from business valuation experts (Boles and Smelzer), in his report to the trial court he ignored entirely their reports and testimony. In significant contrast to the efforts of Boles and Smelzer to conduct valuations generally in accordance with the Delaware Block methodology prescribed by **Glosser Bros.**, Duncan explains in his report that he arrived at his $325,000 valuation for the business equipment merely by reviewing the insurance coverages "together with the Appraiser's view of the premises." Report of Appraiser, 11/1/2010, at 13. In other words, Duncan valued Visaggio's' business equipment by starting with the value provided by the company's casualty insurance provider ($642,000),[8] and then adjusted this number downward based upon his own observation of the equipment (which he

_____

appoint a master to hear the evidence and issue a report and recommendation. Pa.R.C.P. 1920.51(a)(1).

[8] Perhaps because Visaggio's' insurance policies were not produced until after all the witness testimony had been received, the certified record contains no information regarding what specific equipment was insured (or excluded from coverage), or how the figure of $642,000 was derived. Moreover, neither Shaffer nor the trial court has cited to any authority suggesting that insurance values have any relevance in a determination of a business' going concern value. The expert reports of Boles and Smelzer do not indicate that either of them requested or reviewed Visaggio's' insurance policies when they performed their going concern valuations, or otherwise suggest that such information would have assisted them in any way.

described as "used, readily available, not unique and in some cases, very dated").

As such, unlike Boles and Smelzer, who each valued Visaggio's as a going concern as per **Glosser Bros.**, Duncan chose to employ an entirely different methodology, one that bore no relation to, and did not rely in any respect upon, the work performed by the two business valuation experts. While neither Boles nor Smelzer assigned any specific value to Visaggio's' business equipment, assigning a value to the business equipment was Duncan's principal (sole) focus. In this regard, it is important to note that Duncan's $325,000 valuation does not constitute a going concern value for the business equipment, but rather his own estimate of the equipment's **liquidation** value, i.e., his estimate of what the equipment might fetch in a sale to a willing buyer in its present condition ("used, readily available, not unique and in some cases, very dated"). This was itself improper.[9] **See**

---

[9] Even a cursory review of Duncan's analysis reflects that it falls far short of the methodology described in **Glosser Bros.** Duncan did not apply a "Delaware Block" weighted average of net asset value, investment value, and market value to arrive at the fair value of Visaggio's' stock. **Glosser Bros.**, 555 A.2d at 133-34. Moreover, neither Duncan nor the trial court offered any basis for employing a deviation from the Delaware Block method (per **Weinberger**), and nothing in the certified record indicates that Duncan's approach constituted an alternative methodology "generally considered acceptable in the financial community." **Id.**

This appeal cannot, however, be decided on this basis. In the proceedings before the trial court, Visaggio's raised this issue of Duncan's failure to follow the **Glosser Bros.** methodology to determine going concern value. Exceptions to the Report of Appraiser, 11/30/2010, ¶¶ 19-20 ("Mr. Duncan

*Glosser Bros.*, 555 A.2d at 133 ("fair value is to be construed as going concern value, as contrasted with liquidation value").

For these reasons, I cannot agree with the Majority that Duncan's $325,000 valuation is supported by competent and substantial evidence. The Majority cites to testimony from Boles suggesting that the "value of the furniture, fixtures, and equipment and inventory" was $191,555. Maj. Memorandum at 17. A review of Boles' report, however, shows that $191,555 did not constitute a valuation of Visaggio's' business equipment, since he arrived at this number by adding the shareholders' equity from the financial statement (-$148,268) with the net value of the real estate ($333,237) and goodwill ($6,586). Visaggio's, Inc. Valuation of Common Stock, 12/31/2007, at 42 (Exhibit 11, Schedule 4). As such, while the book value[10] of the business equipment may have been included as one

_____

did not consider any of the factors laid out by the *Glosser* court."). Visaggio's did not raise this issue on appeal, however, and therefore it is waived.

[10] In *O'Connor*, our Supreme Court observed that book value "does not accurately represent the fair value of the corporate assets," and that the "suggestion that the book value of the shares is any measure of their value is clearly fallacious." *O'Connor,* 304 A.2d at 700.

The Majority correctly notes that book values for Visaggio's' business equipment were listed in its annual financial statements. Maj. Memorandum at 15-16. Even to the extent that (per *O'Connor*) these values provided any indication of the going concern value of the business equipment, however, Duncan's report makes clear that he did not rely upon them in reaching his $325,000 valuation, as he instead relied solely upon the insurance policies and his own view of the equipment. Accordingly, the book

component of the shareholder's equity portion of this calculation, the $191,555 figure also includes other items, including real estate and goodwill, and thus does not represent the value of the business equipment.

The Majority also cites to testimony from Smelzer suggesting that the value of the equipment was $487,714. Maj. Memorandum at 17. As discussed hereinabove, however, Boles' valuation report (from which Smelzer obtained this number) shows that Boles arrived at $487,714 by multiplying a weighted average of annual sales for the years 2004-2007 with an industry multiple. *Id.* at Exhibit 11, Schedule 3. Accordingly, $487,714 represents a capitalization of Visaggio's' annual sales, not the value of its business equipment.

In sum, Duncan's valuation of Visaggio's' stock is not supported by any competent or substantial evidence of record, and does not even reflect a going concern valuation as is required by law in this context. To the contrary, because Duncan has no expertise in the valuation of business equipment (belonging to hotels, restaurants, or otherwise), his report constitutes, at best, his speculation regarding the liquidation value of the business equipment. As a result, the trial court erred as a matter of law in adopting Duncan's $525,000 valuation of Visaggio's. Accordingly, I would

---

values of the equipment in the financial statements provide no support for Duncan's $325,000 valuation.

reverse the trial court's decision and remand this case to the trial court for further proceedings consistent herewith.